# HILLARY BALL *et al.*

*v.*

# FANNY PALMER *et al.*

1. POSSESSION—*by heir, not adverse to co-heir.* Where two of the heirs residing with the ancestor, on land owned by him at the time of his death, continue to reside there after his death, but set up no claim to an exclusive ownership of the land, their possession at the time of the death of the ancestor, and subsequently, is not adverse to the other heirs.

2. ADVERSE POSSESSION—*clear evidence of a disseizin necessary, as between co-heirs.* Where one of the heirs is in possession at the time of the death of the ancestor, it requires clear and satisfactory proof of a subsequent disseizin of the co-heirs, to characterize such possession as becoming adverse, so as, by lapse of time, to bar the right of entry of the co-heir.

3. DISSEIZIN—*of co-tenant.* To constitute a disseizin of a co-tenant, there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as, by their own import, to impart information and give notice to the co-tenant that an adverse possession and an actual disseizin are intended to be asserted against him.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. STEVENSON & EWING, for the appellants.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a petition for partition, by the appellee Fanny Palmer, of certain lands whereof Catharine Ball died seized. She claims as the half-sister and sole heir at law of David Ball, Jr., deceased, who was the only child and heir at law of David Ball, Sr., deceased, who was one of the children and heirs at law of Catharine Ball. The appellants Mary and Elizabeth Ball claim that the land in controversy belongs to them exclusively; that it was given to them by their mother, Catharine Ball; that they have been in possession for more than twenty years before the filing of the petition, claiming adversely to all the world, and paid all taxes assessed on the land; that Catharine Ball gave David Ball, Sr., in his lifetime, $200 in money for his interest in her estate, which he accepted with that understanding, and that he entered wild lands with the $200 so given him, which have since become valuable; and they insist that, even if it shall be held appellants Mary and Elizabeth have not a good title by gift from Catharine Ball, nor by prescription, and that appellee is not concluded by the contract between Catharine Ball and David Ball, Sr., the $200 so paid by her to him should be treated as an advancement, and appellee should be required to bring the land entered, with the $200, into hotchpot.

Appellee, by her amended petition, sets up the Statute of Frauds against the exclusive claim made by appellants Mary and Elizabeth, to the lands, and brings into hotchpot the $200 obtained by David Ball, Sr., from Catharine Ball.

The court below decreed in conformity with the prayer of the petition.

The questions presented for our consideration relate, only, to the claim made by Mary and Elizabeth Ball to the exclusive ownership of the land.

Catharine Ball died intestate, and it is not claimed she made a deed of the land to Mary and Elizabeth, and the evidence, in our opinion, fails to show a title in them by prescription. They were living with their mother on the land when she died, in 1849, and they simply continued to reside there. Their own evidence shows that they did not, upon their mother's death, set up any claim of exclusive ownership to the land, but that they recognized the right of her other heirs to an interest therein; and W. P. Clary swears that he had been residing with them for some ten years, and that, when he first came to live with them, they told him that appellee had an interest in the land, and they expected she would get her share, though they did not think she ought to have it. He also swears that he has "heard them say, over and again, that they wished it was divided up, and that it ought to have been a long time ago;" and that four or five years ago was the first time he heard them claim the land as their own. Their possession at their mother's death, and subsequently, was not adverse to the other heirs, but in consonance with their rights; and the rule is, it requires clear and satisfactory proof of a subsequent disseizin of the co-heir to characterize such a possession as becoming adverse, so as, by lapse of time, to bar the right of entry by the co-heir. We said in *Busch* v. *Huston*, 75 Ill. 347, in speaking of when the possession of one co-tenant may be regarded as adverse to the others: "It is not sufficient that he continues to occupy the premises and appropriates to himself the exclusive rents and profits, makes slight repairs and improvements on the lands, and pays the taxes; for all this may be consistent with the continued recognition of the rights of his co-tenants. To constitute a disseizin, 'there must be outward acts of exclusive ownership, of an unequivocal character, overt and notorious, and of such a nature as, by their own import, to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them.' *Warfield* v. *Lindell*, 38 Mo. 581."

The point made, that David Ball, Sr., accepted $200 from

his mother, as an advancement, in lieu of his entire interest in the estate, is not supported by the evidence.

Elizabeth Ball, in testifying in regard to the payment of the $200 to David by their mother, says, "I think it was to have been paid back."

Mary Ball, after speaking of the payment of the money, was asked this question: "Was this money furnished him for his share and interest of his mother, or was it money loaned to be paid back?" She answered: "She loaned him some and it was never paid back."

But such a contract, if made, could, in no event, be enforced as against the objection here interposed, that it was not in writing, as required by the Statute of Frauds; and herein the cases cited by the counsel for appellant, on this point, differ from this. They arose upon contracts free from objection on account of the statute.

But it is insisted that the payment of the $200, being an advancement, should be limited to some particular time within which it can be brought into hotchpot.

Under the evidence showing that the money was merely loaned, it is impossible to hold that it was given as an advancement; but even it were, we think the only limitation can be when the heir claims his interest in the estate, and as long as this right is not barred, the other, which is but the incident to it, can not be barred.

Even if the payment or loan of $200 to David could be held as an advancement, it could not be held as conclusive of the right of appellee. She is entitled to bring into hotchpot and share in the partition and distribution of the estate. Whatever distinctions may be made elsewhere, our statute allows the advancement to be brought into hotchpot in all cases. Gross' Statutes of 1869, p. 807, § 63.

The objection, that the decree is erroneous in requiring Hillary Ball to bring the money received by him from his mother into hotchpot, does him no prejudice, since it is left purely to his option whether he shall do it or not.

We see no error in the decree, and it will be affirmed.

*Decree affirmed.*