Theodore Sontag

*v.*

Walter W. Bigelow *et al.*

*Filed at Mt. Vernon June 18, 1892.*

1. Limitation Act of 1839—*establishing title under.* In order to establish title under the first section of the act of 1839 three things are requisite: color of title, seven years' possession of the premises, and seven successive years' payment of taxes by the person in whose name the color of title stands.

2. Same—*color of title under bill for partition.* A master's deed made on bill for the partition of land, which contains a grantor and a grantee, and purports on its face to convey the title to the land therein described, is good as color of title under the Limitation law of 1839.

3. Limitations—*possession by one—under joint deed—extent of bar.* Where a person goes into possession of land under a deed purporting to convey the same to him and another, and pays all taxes thereon until his death, and his widow and heirs complete the seven years' payment of taxes under such deed while in possession, the bar of the statute will operate only upon the one undivided half of the land.

4. Same—*parol partition does not give color of title.* A parol partition of land, although followed by an exclusive possession in accordance with the terms of the agreement of partition, does not constitute color of title under the seven years' limitation law.

5. Same—*in favor of a tenant in common who acquires title from a stranger.* If a tenant in common, before taking possession of the land, acquires title or color of title from a stranger, and enters claiming the land under such title, then he may properly invoke the Statute of Limitations as a bar as against his co-tenant.

6. TENANT IN COMMON—*adverse possession to defeat the rights of the co-tenant.* Where one of two tenants in common·takes the actual possession of the land and continues to occupy the same, and appropriates to himself the exclusive rents and profits for more than seven years, and does nothing else to apprise his co-tenant that he claims to be the absolute owner of the entire premises, such possession will not be adverse, but will be the possession of both, and such tenant in the actual possession can not, while so holding, acquire color of title so as to defeat the rights of his co-tenant.

7. The possession of tenants in common being common, and each having a right to occupy, not only will such possession, though held by one alone, be presumed not to be adverse to his co-tenant, but it will ordinarily be held to be for the latter's benefit, so far as preserving his title thereto, the possession of one tenant in common being deemed that of all.

8. Where one tenant in common.is in possession of land, it requires clear and satisfactory proof of a subsequent disseizin by a co-tenant to characterize his possession as being adverse, so as, by lapse of time, to bar a right of entry. It is not sufficient that he continues to occupy the premises and appropriate to himself the exclusive rents and profits, makes slight improvements on the land, and pays the taxes.

9. EJECTMENT—*based upon title acquired by parol partition.* Where a parol partition of land is followed by a possession in conformity therewith, it will so far bind the possession as to give each co-tenant the rights and incidents of· an exclusive possession of his part of the property; and such possession may be set up as a defense to an action of ejectment brought in violation of the parol partition, and a bill in equity may be maintained to compel a deed. But a party can not maintain ejectment based upon a parol partititon, as the plaintiff in that action must recover on a legal litle, and can not on an equitable title.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. W. H. SNYDER, Judge, presiding.

Mr. H. CLAY HORNER, and Mr. GEORGE L. RIESS, for the plaintiff in error :

As the partition was only by parol, and admitting, for argument's sake, that Alfred and Walter Bigelow had the legal title, each one, on the parol partition's consummation, became seized of the legal title to one-half of his allotment, and had only the equitable title to the other half. As an equitable title

will not support ejectment, (*Barrett* v. *Hinckley,* 124 Ill. 36,) on their own showing defendants in error would be entitled to judgment for only the undivided one-half of the land described in the declaration. *Gage* v. *Bissell,* 119 Ill. 305; *Shepard* v. *Rinks,* 78 id. 191; *Tomlin* v. *Hilyard,* 43 id. 302; *Woodhull* v. *Longstreet,* 18 N. J. L. 405; Freeman on Co-tenancy, sec. 397; Browne on Statute of Frauds, sec. 71.

On analysis of the evidence we will show, in argument, that no evidence appears in this record that the division gave the exact half, but all witnesses speak of the east "part" and the west "part," the word "half" appearing nowhere outside the declaration.

There can be no question that the master's deed to plaintiff in error, Theodore Sontag, Sr., of April 27, 1874, was color of title in good faith. No one disputes Sontag's possession and payment of taxes under that deed from 1874 forward. The county surveyor swears he surveyed the land in dispute in 1877, and Sontag was in possession of all of it then. This declaration was filed in September, 1885, so plaintiff in error has over seven years' possession under color, with payment of taxes. As it is shown that only one of defendants in error began suit within three years after the age of twenty-one, in the most favorable view only one of defendants in error was entitled to recover, and he was only entitled to one-half of the part to which they had legal title,—one-fourth of the lands described in the declaration. Rev. Stat. chap. 83, sec. 8.

Messrs. HARTWELL & SPRIGG, for the defendants in error:

A parol partition of land between tenants in common, carried into effect by possession taken by each party of his share, is valid and binding on the parties thereto and on those claiming under them. *Tomlin* v. *Hilyard,* 43 Ill. 300; *Gage* v. *Bissell,* 119 id. 298; *Shepard* v. *Rinks,* 78 id. 188; *Best* v. *Jenks,* 123 id. 447.

The owners of adjoining lands can, by parol agreement, settle and permanently establish a boundary line between their lands, and we insist, that as boundary lines can be settled by parol agreement, partition of lands can be so made by tenants in common, as title to land is involved in each instance. *Cutler* v. *Callison*, 72 Ill. 113; *Kerr* v. *Hitt*, 75 id. 51; *Bauer* v. *Gottmanhausen*, 65 id. 499; *Grim* v. *Murphy*, 110 id. 271; *McNamara* v. *Seaton*, 82 id. 498; *Bloomington* v. *Cemetery Ass.* 126 id. 221; *Fisher* v. *Bennehoff*, 121 id. 426.

The testimony clearly shows that the parties to this suit claim title from a common source.

Color of title acquired in good faith, and payment of taxes for seven successive years, accompanied with actual possession of the parties, as in this case, is a complete bar. *Hinchman* v. *Whetstone*, 23 Ill. 185; *Hale* v. *Gladfelder*, 52 id. 91; *Riverside Co.* v. *Townshend*, 120 id. 9; Angell on Limitations, sec. 381.

A quitclaim deed obtained in good faith is sufficient to show claim and color of title under the Limitation act. *Holloway* v. *Clark*, 27 Ill. 483.

A right to land acquired by limitation is affirmative, and can be enforced. *Paullin* v. *Hale*, 40 Ill. 274.

The statute of seven years' limitation does not require that the possession under claim and color of title should be continued in one person, nor that the same person shall pay all the taxes for that period. Taxes may be paid by the administrator, tenant, trustee or *cestui que trust*, or by those having or succeeding to the possession. *Cofield* v. *Furry*, 19 Ill. 183; *Chickering* v. *Failes*, 38 id. 345.

Certainly, the widow succeeding to the possession can continue the payment of taxes begun by the deceased, and thus complete the bar for the benefit of herself and children. Rev. Stat. 1845, sec. 10, p. 350; Starr & Curtis' Stat. sec. 6, chap. 83, p. 1539; *Holbrook* v. *Forsythe*, 112 Ill. 310.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of ejectment, brought by Walter W. Bigelow and Martha Krueger, heirs-at-law of Walter Bigelow, Sr., deceased, against Theodore Sontag, to recover the west half of the west fractional half of section 4, township 3, south, range 11, west, in Monroe county, containing fifty-eight acres. On a trial of the cause in the circuit court the plaintiffs recovered a judgment for the land described in the declaration, and the defendant sued out this writ of error.

For the purpose of establishing title, plaintiffs read in evidence a deed dated December 1, 1853, from James Moore and wife to N. B. Harlow, conveying the south-west fractional quarter of section 4, township 3, range 11, in Monroe county, and also a deed dated January 7, 1857, from N. B. Harlow and wife to Alfred and Walter Bigelow, conveying the same land. The plaintiffs then called as a witness Mrs. Means, who testified substantially as follows: "Walter Bigelow was my husband, and was the son of Alfred Bigelow and the father of plaintiffs. He died before this suit was begun, leaving Ellen, Martha and Walter Bigelow his children and heirs. Ellen, the oldest, and Martha, were by a former wife. Walter is my child. Ellen is dead. Walter Bigelow, Sr., went into possession of this tract of land in 1857. He paid the taxes till he died, and I paid them after he died, till 1868. I then moved to Missouri, and afterwards returned to Randolph county, Illinois. Walter Bigelow, the plaintiff, was born in 1862, on April 15. Alfred Bigelow and Walter, Sr., divided this land shortly after buying from Harlow. I married Walter in 1861, after the land was divided. Walter took the west part and Alfred took the east part. Walter built a house, well, stable and smoke-house on this land soon after it was bought, and cleared twenty-five acres. There was a dividing fence. Walter and his family occupied this land until 1868, and paid the taxes."

For the purpose, we presume, of proving that plaintiffs and defendant claim title through a common source, plaintiffs read in evidence the following deeds: A deed from Alfred and Walter Bigelow and wives to James Cann, of February 5, 1858, conveying the south-west corner of the south-west fractional quarter of section 4, township 3, range 11, containing twenty-nine acres; a deed from James Cann to R. L. Bigelow, of October 4, 1858, for twenty-nine acres in last deed; a deed from S. W. Means and wife to Joseph McGregor, of November 16, 1870, for the south-west fractional quarter of section 4, township 3, range 11; a deed from J. Robinson and wife to R. L. Bigelow, of February 6, 1863, for "our interest in" the same land as in the last mentioned deed; a deed from R. L. Bigelow and wife to N. B. Harlow, of August 15, 1863, for the twenty-nine acres bought by him from James Cann, (above,) and "also the interest of the above described land heired by myself and wife, and also the interest deeded me by John Robinson and wife, being the interest of Alfred Bigelow's estate,—being seven and one-quarter acres, the last two interests,—the whole tract containing one hundred and sixteen acres;" a deed from Ezra Bigelow and wife to A. T. Cann, of April 26, 1865, for "all my interest in" said south-west fractional quarter, etc.; a deed from A. T. Cann and wife to B. F. Masterson, of April 6, 1866, for "all my interest in" the said south-west fractional quarter, "it being my interest and that I purchased of Ezra Bigelow and wife, being seven and one-half acres, more or less;" a deed from N. B. Harlow and wife to B. F. Masterson, of November 4, 1865, for the lands deeded grantors by R. L. Bigelow, as in the above deed; a deed from B. F. Masterson to Theo. Sontag, the defendant, of March 1, 1867, for the following described premises: "Twenty-nine acres in the south-west corner of the south-west fractional quarter of section No. 4, township No. 3, south, range No. 11, west, being the same conveyed to James H. Cann by Alfred Bigelow and others, on the 15th day of February, 1858; also,

seven and one-quarter acres in the above described fractional section heired by R. L. Bigelow and John Robinson and wife in the estate of Alfred Bigelow, deceased, and also seven and one-half acres, more or less, in the above described fractional quarter of the above described section, heired by Ezra Bigelow and A. T. Cann in the estate of Alfred Bigelow, deceased, the whole tract containing one hundred and sixteen acres."

It will be observed that the plaintiffs did not establish a chain of title from the United States, but the title under which they claim started with a deed from James Moore to Harlow, and this was followed by a deed from Harlow to Alfred and Walter Bigelow. While these two conveyances did not establish title in Alfred and Walter Bigelow, they were, however, good color of title, which, if followed with seven successive years' possession and payment of taxes, would ripen into title to the premises,—and, as we understand the position of plaintiffs, this is what they rely upon to sustain the judgment.

In order to establish title under the act of 1839 three things are requisite: color of title, seven years' possession of the premises, and seven successive years' payment of taxes by the person in whose name the color of title stands. It may be regarded as sufficiently established by the evidence that Walter Bigelow went into possession of the land in controversy in 1857. He continued in possession and paid all taxes until his death, the date of which is not shown. It occurred, however, before the seven years had expired. After his death his widow and children remained in the possession of the premises and paid all taxes until 1868, which would make seven years' possession and payment of taxes, and two or three years to spare.

But the question arises, whether Walter Bigelow and his heirs, while so in possession and while paying the taxes, had color of title to the entire tract in controversy. Under the deed from Harlow to Alfred and Walter Bigelow, it is plain that Walter Bigelow acquired color of title only to the undi-

·vided half of the premises, and upon his death that only descended to his heirs, the plaintiffs, and it nowhere appears that he ever received any other deed of the premises, or any part thereof, from any person.

But it is said, that after Alfred and Walter Bigelow received a deed from Harlow they made a parol partition, under which Walter took the west half and Alfred the east half of the premises conveyed to them, and under this parol partition Walter became vested with the color of title to the west half.    It is no doubt true, as held in *Tomlin* v. *Hilyard*, 43 Ill. 301, and the authorities there cited, that a parol partition between tenants in common, when followed by a possession in conformity therewith, will so far bind the possession as to give to each co-tenant the rights and incidents of an exclusive possession of his property.    But can a parol partition be treated as a deed, and is it sufficient to pass the legal title or color of title so as to authorize the party claiming under it to maintain ejectment?    In the case last cited it is said: "While the legal title might not, perhaps, be considered as passing by such parol partition, unless after a possession sufficiently long to justify the presumption of a deed, yet the parol partition, followed by a several possession, would leave each co-tenant seized of the legal title of one-half of his allotment and the equitable title to the other half, and by a bill in chancery he could compel from his co-tenant a conveyance of the legal title according to the terms of the partition."    In *Shepard* v. *Rinks*, 78 Ill. 188, a parol partition was held to be binding on the parties, and a possession of premises under a partition of that character was held to be sufficient to defeat an action of ejectment.    In *Best* v. *Jenks*, 123 Ill. 447, in a proceeding for partition and assignment of dower, where a parol partition of a certain tract of land had been made between a brother and sister, which had been acquiesced in for a period of thirty-five years, it was held that the sister was the owner of the portion allotted to her, at her death, and that her husband

was entitled to dower therein.  Washburn on Real Property (vol. 1, p. 685,) lays down the rule that a parol partition can not be effectual unless accompanied by a deed, on the ground that the Statute of Frauds applies; but the author also says, where a parol partition is followed by a possession in conformity with such partition, it will so far bind the possession as to give each co-tenant the rights and incidents of an exclusive possession of his property.

But without citing further authorities we think it is plain, where a parol partition has been made, and the premises occupied according to the partition by the respective parties, the partition will be valid, and such partition may be set up as a defense, should an action be brought to recover the possession in violation of the parol partition, and a bill in equity may be maintained to compel a deed.  But in an action of ejectment the plaintiff must recover, if at all, on a legal title— not upon an equity; and we are aware of no case which goes so far as to hold that a plaintiff could treat a parol partition as a deed, and thus recover upon it in an action of ejectment. We entertain no doubt that plaintiffs might maintain a bill in equity for a deed, or, had they been in possession under the partition, they could have relied upon it as a defense; but having lost the possession we do not think they can, on ejectment, rely upon a parol partition to establish their title to the premises involved.

From what has been said it follows that plaintiffs recovered the entire premises described in the declaration when they were only entitled to recover an undivided half.

But it is insisted by the defendant that he established color of title, and possession and payment of taxes for seven successive years, before the action was brought, and the title thus established was sufficient to defeat plaintiffs' action.  The defendant first offered in evidence the deeds conveying the premises to him which had been read in evidence by the plaintiffs.  The defendant then offered in evidence a patent from

the United States to Porter, Glasgow and Nervine, of May 3, 1824, for the west fractional half of section 4, township 3, range 11, signed "By the President, J. M.—G. G., Commiss. of the general land office," which was objected to because not properly signed, objection sustained, and exception taken; a deed from Glasgow and wife (one of the patentees) to William Henckler, of April 3, 1873, for patent land above; a bill in chancery by Henckler, against Porter and Nervine, (the other patentees,) and others, including defendants and Joseph McGregor, for partition of the land in controversy; a decree of March 6, 1874, for a partition sale, and a deed of the master, in pursuance of said partition decree, to defendant, Theo. Sontag, Sr., of April 27, 1874, for the west fractional half of section 4, township 3, range 11. The master's deed is relied upon as color of title.

Whether the proceedings which led to the sale and execution of the master's deed conformed to the law, or not, was a question which would properly arise if the deed had been offered as title, but the proceedings, however defective, would not affect the deed as color of title. (*Mason* v. *Ayres*, 73 Ill. 121; *Hardin* v. *Gouveneur*, 69 id. 140; *Dickenson* v. *Breeden*, 30 id. 326.) In the last case cited, after referring to several decisions to establish what kind of an instrument constituted color of title, it was said: "The substance of these decisions is, that any deed purporting on its face to convey title, no matter on what it may be founded, is color of title." Here the deed contained a grantor and grantee, and purported, on its face, to convey the land, and under the uniform decisions of this court it constituted color of title. As to payment of taxes, the defendant proved that he had paid for a period of at least ten years, from 1875 to 1884, both years included. He also proved possession of the land during the same period.

But while the evidence established color of title, seven years' possession and payment of taxes, we do not think the possession of the defendant was adverse, and upon that ground

he can not invoke the aid of the Statute of Limitations of 1839. As has been seen, Alfred Bigelow and Walter Bigelow were tenants in common, and on the 1st day of March, 1867, the defendant, Sontag, acquired the title originally held by Alfred Bigelow, through a deed from B. F. Masterson. Under this title he went into the possession of the premises. On the trial, in 1889, he testified that he had been in possession twenty or twenty-one years. From this testimony it is manifest that the defendant went into the possession of the premises in 1868,—the same year the plaintiffs moved away,— and went in under the Bigelow title, as he had no other title at that time. He therefore acquired possession of the premises as a tenant in common with the plaintiffs, and, occupying that position, he could not acquire color of title in 1874, and rely upon such title to defeat the plaintiffs.

In Washburn on Real Property (vol. 1, p. 656,) the author, in speaking in reference to the possession of tenants in common, says: "But their possession being common, and each having a right to occupy, not only will such possession, though held by one alone, be presumed not to be adverse to his co-tenant, but it is ordinarily held to be for the latter's benefit so far as preserving his title thereto, the possession of one tenant in common being deemed to be the possession of all." In *Brown* v. *Hogle et al.* 30 Ill. 119, it was held that it was fraud for a tenant in common to permit the land he holds in common with others to be sold for taxes, and he himself become the purchaser for his own benefit. In *Busch* v. *Huston,* 75 Ill. 344, this court held: "Where one tenant in common is in possession of land, it requires clear and satisfactory proof of a subsequent disseizin of a co-tenant to characterize his possession as being adverse, so as, by lapse of time, to bar a right of entry. It is not sufficient that he continues to occupy the premises, and appropriates to himself the exclusive rents and profits, makes slight improvements on the land, and pays the taxes." The same doctrine was announced in *Ball* v.

*Palmer*, 81 Ill. 370. Here, the defendant did nothing to apprise the plaintiffs that he was claiming to be the absolute owner of the entire premises except to receive the rents and pay the taxes, which in the case last cited was held to be insufficient. Had the defendant, before he went into the possession of the property, acquired title or color of title from a stranger, and entered claiming the land under such title, then he might properly invoke the Statute of Limitations as a bar. But he does not occupy that position. He acquired the title of the heirs of Alfred Bigelow, who were tenants in common with plaintiffs, and entered into possession under such title, and, so far as appears, never gave the plaintiffs notice that he was claiming under any other or different title.

From what has been said it follows that the decision of the court as to the defense of the Statute of Limitations was correct, but for the error indicated the judgment will be reversed and the cause remanded.

*Judgment reversed.*