RAMA O. GOMEL, Appellant, *vs.* ERNEST G. MCDANIELS, Appellee.

*Opinion filed October 27, 1915.*

1. DEEDS—*general rule as to delivery of a deed to third person for grantee.* Delivery of a deed by the grantor to a third person for delivery to the grantee upon the grantor's death is a valid delivery if the grantor intends by it that the deed shall pass out of his control, but if he does not so intend but merely delivers the deed to the third person as a convenient place of deposit it is not a valid delivery and is not effective to pass title to the grantee.

2. SAME—*grantor's intention at time of delivery to third person controls.* The grantor's intention at the time of the delivery to a third person controls, and such intention may be evidenced by acts or words or both, but, however shown, it must appear that the grantor intended to reserve no control over the deed after delivering it to the third person.

3. SAME—*after valid delivery the grantor's change of mind has no effect.* If the grantor, at the time of delivering a deed to a third person for delivery to the grantee at the grantor's death, intended to relinquish all control over the instrument, the act of the grantor in subsequently changing his mind and re-possessing himself of the deed does not operate to divest the grantee of title and re-invest it in the grantor.

4. SAME—*what is a sufficient acceptance of voluntary conveyance to stranger.* Even though there may be no presumption of an acceptance of a voluntary conveyance where the grantor and grantee occupy no fiduciary relation, yet if the grantee knows that the deed has been executed and delivered to a third person for delivery to him at the grantor's death and expresses his consent thereto in some manner there is a sufficient acceptance.

5. SAME—*sale of land in accordance with an executed parol partition conveys title.* Where tenants in common divide the sixty-acre tract they own in common into north and south halves, go into exclusive possession thereof and erect a fence between the halves and thereafter continue in such possession for many years, each paying the taxes, assessed in his own name, on the respective thirty-acre tract of which he' is in possession and receiving the rents and profits from it when rented, there is a parol partition, and a deed by one conveying the whole thirty-acre tract in his possession to a third person will pass the title.

APPEAL from the Circuit Court of Douglas county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

H. A. NEAL, for appellant.

EDWARD C. CRAIG, and DONALD B. CRAIG, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an action of ejectment brought by appellant against appellee in the circuit court of Douglas county. By the first count of the declaration appellant alleges he is the owner of the fee in thirty acres of land described and seeks to recover the same. The second count alleges appellant is the owner of the fee in the undivided one-half of said thirty acres. A trial was had by the court without a jury and a judgment rendered for defendant, from which judgment this appeal is prosecuted.

Both parties claim title to the land through a common source. The thirty acres in controversy is a part of the land that was owned by John Gomel in his lifetime. He died intestate in 1883, leaving appellant, Rama O. Gomel, Orlando Gomel and John L. Gomel, his sons, and Savilla Wheelock, a daughter, as his only children and heirs-at-law. He left surviving him a widow, Harriet, who has since died. Shortly after the death of John Gomel his son John conveyed his undivided interest in the land to Rama, and the daughter, Savilla, conveyed her undivided interest to Orlando. Eighty acres of the land of her husband was assigned to the widow as dower, and said eighty embraced the land here in controversy. Before her death appellant and his brother Orlando purchased the dower interest of their mother in the eighty acres and she executed to them a conveyance therefor. By the conveyances from the widow and two of the children of John Gomel, deceased, his sons Rama and Orlando became the owners each of the undivided one-half of the land left by their father. In December, 1911, Orlando executed a deed to appellee, Er-

nest G. McDaniels, purporting to convey to him the entire thirty acres in controversy. McDaniels was in no way related to Orlando but had cultivated the land in controversy for several years. McDaniels owned a forty adjoining the land in controversy, and from the testimony appears to have been kind and attentive to Orlando, who was a bachelor, living alone a greater portion of the time. A little more than two years before his death Orlando went to an attorney by the name of Winkler and asked him to prepare a deed conveying to McDaniels the thirty-acre tract of land. Winkler looked up the proper description, prepared the deed, which Orlando signed and acknowledged before him, and left it with Winkler to be delivered to the grantee upon the grantor's death. A few days later Orlando went to the same attorney and had him prepare a will, by which he left to his brothers and sister all of his property, not describing the same. After the will was executed it was left with Winkler. About a year later Orlando went to Winkler and asked for his papers. Winkler delivered to him the will and the deed, both of which he kept in his possession until his death. Within a few days after the death of Orlando, Winkler secured possession of the deed and appellee recovered it from him by virtue of a writ of replevin and placed it on record. By virtue of that deed appellee claims title to the land.

Appellant contends (1) that the deed was never delivered; (2) that the conveyance was never accepted by the grantee; (3) that if the deed was delivered and accepted it was only effective to convey the undivided one-half of the thirty acres of land, the contention being that appellant owned the other undivided one-half. Appellee insists the proof shows there was a valid delivery of the deed, that the conveyance was accepted by the grantee, and that it vested in him the title to the entire thirty acres. This last proposition is based upon the contention that there had been a parol partition between Orlando Gomel and appellant, by

which the former took the thirty acres in controversy and the latter thirty acres adjacent to it on the south.

Winkler testified that after the deed was executed he gave it to the grantor and explained to him what was necessary to make it good, and told the grantor he could not keep it among his papers but would have to deliver it to the grantee or to somebody for him, to be delivered at the grantor's death; that the grantor said if that was true he would give the deed to the witness, to be given to the grantee in the event of the grantor's death, and the deed was given to the witness.

By his will Orlando Gomel gave his sister forty acres of land which is no part of the land here in controversy. All the residue of his land he directed his executor to sell at public sale and divide the proceeds equally among his two surviving brothers and his sister. Pursuant to the power conferred by the will the executor advertised the land for sale, and at the sale it was bid off by Rama Gomel, John Gomel and their sister, Savilla Wheelock, and a deed to them was executed by the executor. Afterwards, and before this suit was brought, John Gomel and Savilla Wheelock executed conveyances of their interests in the land in controversy to appellant.

There can be no question as to the rule of law governing the delivery of a deed in escrow and what is necessary to make such delivery effective to pass title. The delivery of a deed by the grantor to a third person for delivery to the grantee upon the grantor's death is a valid delivery if the grantor intends by it that the deed shall pass out of his control and dominion. If he reserves control of it or merely places it in the hands of a third person, not absolutely for delivery but as a convenient place of deposit, it is not a valid delivery and is ineffective to pass title to the grantee. The intention of the grantor at the time of the delivery to the third person may be evidenced by words or acts or by both, but however shown, it must appear that

no control over the deed was intended to be reserved by the grantor after delivering it to the third person. (*Linn* v. *Linn,* 261 Ill. 606, and cases there cited; also, *DeGraff* v. *Manz,* 251 id. 531; *Clark* v. *Clark,* 183 id. 448; *Latimer* v. *Latimer,* 174 id. 418; *Shea* v. *Murphy,* 164 id. 614.) A subsequent change of mind by the grantor can. not change the original nature and effect of the transaction. *Callerand* v. *Piot,* 241 Ill. 120; *Fitzgerald* v. *Allen,* 240 id. 80; *Maxwell* v. *Harper,* 98 Pac. Rep. (Wash.) 758; *Arnegaard* v. *Arnegaard,* 41 L. R. A. (N. Dak.) 258; *Squires* v. *Summers,* 85 Ind. 253; *Blight* v. *Schneck,* 51 Am. Dec. (Pa.) 478.

We think the evidence shows the delivery of the deed by the grantor to Winkler was a valid delivery. We find no intimation in it that the grantor then intended to reserve any control over it after that time. He had evidently had the impression when he made the deed that no delivery would be necessary before his death, but when told by his attorney that a delivery to someone for the grantee upon the death of the grantor was necessary, he evidenced his intention to make the deed effective by then delivering it to Winkler with instructions to deliver it to the grantee upon his death. It does not appear from Winkler's testimony that the grantor ever claimed any right to the possession or control of the deed afterwards. He made no demand for the deed at the time Winkler gave it to him. He had left his will with Winkler, and in the neighborhood of a year after the will and deed were executed called on Winkler and asked for his papers. Winkler gave him the will and the deed and he retained the possession of them until his death. At most, the acceptance and retention of the deed by the grantor from Winkler could only indicate he had changed his mind since delivering it to Winkler. Procuring it to be delivered back to him under such circumstances could not affect the validity and effect of the original transaction.

Appellant contends that there was no acceptance of the conveyance by the grantee and that the execution and delivery of the deed to Winkler should be treated as a mere offer to convey, subject to be revoked by the grantor at any time before acceptance. He further contends that the presumption of acceptance attending cases of voluntary settlements between parent and children or persons occupying fiduciary relations toward each other cannot be indulged in this case because no such relations existed between the parties and the conveyance can be considered only as a mere donation or gift. Appellee was not entitled to the possession of the deed or the land until the death of the grantor. Whether he accepted the conveyance could therefore only be evidenced by his knowledge of it and consent to receive it. If it be conceded there is no presumption of acceptance on the ground that the conveyance was beneficial to the grantee, as in cases of voluntary settlement between parent and children, if the testimony of appellee is to be believed he did all that was required or could be done to evidence acceptance in such cases. Appellee testified that in the fall of 1911 Orlando Gomel told him he was going to make him a deed for the land and that if he was down at Winkler's he would do it then. About a year later Gomel talked to appellee about it again, and Gomel said he had fixed that piece of ground as he had told appellee he was going to do. Appellee told him he would be very thankful. On behalf of appellant, Crawford Cash, who was executor of the will of Orlando Gomel, testified that after the death of Gomel, in February, 1914, he had a conversation with appellee, in which appellee said he had attended the State Fair at Springfield with Orlando Gomel in the fall of 1911, and that while they were at the fair Gomel said he was going to give appellee the thirty acres in controversy. Appellee said that this was all that was said between them at the fair, and that in the winter following the deed was made, and that Gomel told him he had it fixed. The wit-

ness testified he asked appellee how Gomel had fixed it, and appellee said he did not know whether by will or deed. Hans McGruder, a son-in-law of appellant, testified he had a conversation with appellee shortly after the death of Orlando Gomel, in which appellee said he hoped one of the heirs would get the thirty acres in controversy who would want to sell it, as he would give a stiff price for it. In rebuttal, appellee testified Cash was mistaken about his saying he talked with Orlando Gomel at the fair in 1911; that he did not go to the fair with Gomel but went with one McShane. He admitted talking with Cash about the deed, and said he told him Winkler had it for delivery, and denied that he told Cash that he did not know whether Gomel fixed the matter by will or deed. He denied having any such conversation with McGruder as that witness testified to, and in view of McGruder's admissions on cross-examination we think very little weight can be given to his testimony. From a consideration of the evidence we cannot say the court was not justified in concluding that appellee knew of the execution and delivery of the deed and agreed and consented to accept the conveyance. If he did, it was an acceptance of it. *Moore* v. *Flynn,* 135 Ill. 74; *Kingsbury* v. *Burnside,* 58 id. 310; *Rivard* v. *Walker,* 39 id. 413; *Winterbottom* v. *Pattison,* 152 id. 334; *Bryan* v. *Wash,* 2 Gilm. 557; 9 Am. & Eng. Ency. of Law, 162; 13 Cyc. 571.

Lastly, appellant insists the proof does not sustain appellee's claim that there was a parol partition between Orlando and Rama Gomel of the sixty acres, by which there was a severance of the ownership in possession as tenants in common, whereby Orlando became the sole owner of the north thirty acres, which is the land in controversy, and Rama of the south thirty acres of the sixty, and appellant insists that he was at least entitled, under the second count of his declaration, to recover the undivided one-half of the thirty-acre tract. It is not denied that the law as hereto-

fore held is, that where a parol partition has been made between tenants in common and the premises occupied by the respective parties according to the partition, such partition may be set up as a defense against an action brought to recover possession in violation of the parol partition. (*Sontag* v. *Bigelow,* 142 Ill. 143; *Tomlin* v. *Hilyard,* 43 id. 300.)   But it is contended the proof of a parol partition was insufficient.   It appears from the testimony that the land here in controversy was the north half of sixty acres which was assigned to the widow of John Gomel for dower.   Orlando and Rama Gomel by conveyances from the other heirs became the sole owners, as tenants in common, of this sixty acres of land, together with another twenty assigned their mother as dower.   In 1890 their mother released to them her dower interest.   Orlando at once took exclusive possession of the north thirty of the sixty-acre tract, which is the land in controversy, and Rama took exclusive possession of the south thirty, and at the same time Orlando took exclusive possession of the west half of the twenty acres and Rama of the east half of the twenty.   Prior to the release by the widow of her dower the land was assessed in her name, and, as we understand the proof, she paid the taxes on it.   After her release of dower to Orlando and Rama their mother's name on the assessor's book of 1890 and the collector's book of 1891 was scratched out and there was written over it in pencil, "Orlando R. Gomel the north half of sixty and Rama O. Gomel the south half."   Also there was substituted for their mother's name on the tax books designating the twenty acres, "Orlando R. Gomel the west half and Rama O. Gomel the east half of twenty acres."   From that time until his death Orlando paid the taxes on the north thirty acres of the sixty-acre tract.   About the year 1890, the exact time not clearly appearing, the two brothers built a fence separating the north thirty from the south thirty of the sixty.   Orlando, by himself and his tenants, continu-

ously occupied the north thirty acres and collected and received the rents and profits from it when rented, while Rama did likewise with reference to the south thirty. In 1909 Orlando conveyed to the trustees of schools, for school purposes, an acre of land out of one corner of the west half of the thirty which he was in sole possession of. No one testified to having been present when a parol partition was made between the brothers or to having heard them talk about it after it was made, but the conduct of the parties, as shown by the evidence, for more than twenty years, and the execution of the deed for the thirty acres by Orlando and the deed to the school trustees by him, we think warranted the conclusion of a parol partition. The evidence was substantially of the same character and quite as strong as in the cases of *Sontag* v. *Bigelow, supra,* and *Tomlin* v. *Hilyard, supra,* where the proof of a parol partition was held sufficient. In 21 Am. & Eng. Ency. of Law, 1141, it is said: "On the question whether there has been a partition of common property between co-tenants, evidence is admissible of separate possession of particular portions thereof by the different co-tenants, the recognition of each other's sole interest in such portions, the exercise of rights of sole ownership, or, in short, of any matters which can reasonably throw light upon the question in issue." In 30 Cyc. 164, it is said: "Whether a partition has been made is a question of fact for the decision of the jury, or of the court when it is authorized to discharge the functions of a jury. A partition may be established by circumstantial as well as by direct evidence, and whenever there has been separate and distinct possession in severalty, maintained for a considerable time, with conveyances or a claim of title in severalty, the fact of such possession and the attendant circumstances are admissible in evidence and may justify the jury in presuming a partition, although there is no direct evidence on the subject, and perhaps even where the evidence shows an attempted partition which on

its face, as a matter of law, must be declared insufficient and void."

We cannot say the judgment in this case is contrary to the law and the evidence, and it is therefore affirmed.

*Judgment affirmed.*