## NATHAN DONASON

*v.*

## JOHN J. BARBERO *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 5, 1907.*

1. MORTGAGES—*when making of deed is, in effect, a redemption.* Where a mortgage is foreclosed and a deed issued to the purchaser, who agrees with the widow, acting for herself and heirs, to extend the time for redemption and make her a deed upon payment of the amount due, the making of a deed to one of the heirs, in pursuance of the contract, who raised the money upon the property itself by deed and mortgage, except a small amount furnished from his own funds, is, in effect, a redemption, and the heirs are tenants in common, the same as if statutory redemption had been made.

2. DEEDS—*when deed does not convey an interest at time of its delivery—ratification by grantor.* A deed in which the name of the grantee was inserted by an agent of the grantor but without the grantor's authority, in a blank left in the deed at the time of its execution, conveys no interest in the land; but if the grantor, in a subsequent suit between the grantee and the other heirs of the estate for partition and accounting, files an answer disclaiming any interest in the premises, such disclaimer ratifies the agent's act as between the heirs and those claiming under them.

3. CO-TENANCY—*fact that party's possession is hostile must be brought to notice of his co-tenants.* Before the exclusive possession of land, coupled with appropriation of its profits and the payment of taxes, can be relied upon by the possessor and his mortgagee with notice as barring the rights of persons who are, in equity, the possessor's co-tenants, the fact that such possession was hostile must have been brought to the notice of such co-tenants; and in determining this question the fact that possession was acquired under an arrangement whereby the property was to be redeemed for the benefit of all the heirs of the estate, and the income applied upon the encumbrance thereon, must be considered.

4. NOTICE—*what is not notice that one co-tenant is claiming entire title.* The fact that in a suit for partition and accounting the tenant in possession filed an answer claiming to be absolute owner of the premises is not notice of that fact to certain of his co-defendants, where no trial of such cause was ever had, and it does not appear that such co-defendants ever filed any answer to the bill or knew what defense the tenant in possession proposed to make.

5. SAME—*when grantee in deed, intended as a mortgage, is not an innocent purchaser.*  One who is familiar with the affairs of an estate and who knows that one of the heirs has acquired the title under a contract by which the property was to be redeemed for the benefit of all the heirs, does not by a deed from such heir, made to secure the pre-existing indebtedness upon the property, become an innocent purchaser as against the other heirs of the estate, and he is chargeable, in law, with notice of their rights.  (*Dugan* v. *Follett,* 100 Ill. 581, distinguished.)

6. SAME—*when grantee of co-tenants is not a mere volunteer.* Tenants in common who have an equitable interest in land may deed the same, without consideration, to a stranger, and the latter may assert such interest against the party in possession to the same exent which his grantors might have done, except as to rents accruing before the deed was made.

APPEAL from the Circuit Court of Knox county; the Hon. R. J. GRIER, Judge, presiding.

This is an appeal from a decree of the circuit court of Knox county dismissing for want of equity, upon a hearing, a bill filed by appellant against John J. Barbero and Andrew C. Housh, and others, for partition, accounting and other relief.

It appears from the record that on October 20, 1882, Nathan Barbero, Calista W. Barbero, his wife, and John J. Barbero, their son, executed a mortgage on 957 acres of land owned by said Nathan Barbero in Knox county, Illinois, to the Provident Life and Trust Company of Philadelphia to secure a loan from it of $15,000.  John J. owned no interest in the land, but seems to have joined in the mortgage for the reason that he was then engaged in managing the business of his father.  On January 1, 1885, Nathan Barbero died intestate, seized of all of said lands, leaving surviving him, his widow, Calista W. Barbero, and Sarah L. McGirr, John J. Barbero, Nathan H. Barbero and Ann M. Donason, his children and only heirs-at-law.  Upon the death of said Barbero the widow took out letters of administration, and by agreement of all the heirs remained in pos-

session of the premises and collected the rents and profits therefrom, and applied the same to the payment of taxes, repairs, improvements, interest on the mortgage indebtedness and her living expenses. At the February term, 1888, of the said circuit court the mortgage was foreclosed, and on April 9, 1888, the premises were sold, under the decree of sale, to the mortgagee for $16,005.39, the amount of the debt, interest and costs. After the sale, and during the time allowed for redemption, Calista W. Barbero, on behalf of herself and the heirs of Nathan Barbero, endeavored to raise the money necessary to redeem the said property. This, however, she was unable to do. In her efforts to secure the money she employed one George W. Lyon to assist her, and on May 31, 1888, Lyon entered into a contract in writing with the said mortgagee whereby it agreed to assign and transfer the certificate of purchase of said property upon the payment to it of $16,005.39, with interest thereon at the rate of six per cent per annum from April 9, 1888, in the following manner: $917.15 on July 20, 1888, $450 on October 20, 1888, $450 on April 20, 1889, and the balance of said amount and interest on August 1, 1889. This contract was made for the benefit of the widow and all the heirs of the deceased. On the application of the Provident company the master in chancery, upon the expiration of the statutory period of redemption, executed and delivered to it a deed for the said premises. The first three payments as provided for in the contract were made by Calista W. Barbero, but whether as they fell due does not certainly appear. The fourth and principal payment was not made. She seems to have been hampered in her efforts by the fact that Sarah L. McGirr would not join in a mortgage for the purpose of raising the funds necessary, and Lyon, who was endeavoring to negotiate a loan, seems to have been unable to find anyone willing to advance the money. After receiving the deed from the master the Provident company made a tentative or qualified extension of the time within which the final

payment could be made under the Lyon contract until September 1, 1889, as shown by letters hereinafter set out. It having become apparent that Calista W. Barbero would fail in her efforts to raise the money in the required time, it appears that John J. Barbero, in the month of July, 1889, employed one C. D. Hendryx, an attorney practicing at Galesburg, Illinois, to secure the funds necessary to complete the transaction contemplated by the Lyon contract. Hendryx called on many persons soliciting the loan, and finally arranged for the same with Messrs. Bourland & Bailey, of Peoria, Illinois, and on August 10, 1889, wrote a letter to C. H. & C. B. Wood, attorneys, of Chicago, Illinois, who were acting with N. W. Harris & Co., of that city, for the Provident company, as follows:

"I learn by Mr. Lyon, at Peoria, that you agreed to extend the time in which the Barberos can redeem. I wish to know if this is true, and if we will remit you the interest for ninety days from August 1, if we can have that? I have the loan placed so there will be no mistake or failure, but as it is eastern money will take a little time to get it around. I think it will be done in thirty days, and as soon as it comes you will get the money, whether ninety days is up or not. If you will kindly write me so I can get your answer by Tuesday morning you will do me a great favor. I don't wish to close the deal for the money unless it will go for redemption.

"Very truly yours,  C. D. HENDRYX,
Attorney for the Barberos."

This letter was turned over to Harris & Co., and on August 12, 1889, they wrote Hendryx in reply, as follows:

"Your favor 10th, to Messrs. Woods, has been placed in our hands for reply. The trust company sent us a deed covering the Barbero land, which we tendered Mr. Lyon in our office a few days since. We asked trust company in case Lyon should not be ready to pay for the property for a few days after money was due, if we should accept payment, and they wrote us that we could do so. We did not make a definite extension of time to Mr. Lyon, as we told him we had no authority to do so. We promised not to sell the land or entertain propositions from other parties without notifying him. We also gave him to understand that if matter was settled up within thirty days from August 1st we had no doubt it would be all right, and that we would deliver deed and accept payment,

provided we did not in the meantime receive instructions to the contrary from trust company. We just wrote Mr. Lyon this morning, before receiving your letter, asking him what the prospect was, and saying to him that he must not expect any further extensions if not closed up this month. Mr. L. claimed he had a party in Peoria who would furnish the money but that there had been some delay in examining the land. We trust this matter will be closed up promptly.

"Yours truly,

N. W. HARRIS & Co.

"P. S.—We suppose you understand that a contract of sale was made with Mr. Lyon some months ago, he representing Mrs. Barbero. We cannot promise anything after this month.

N. W. H. & Co."

On July 29, 1889, the Provident company, anticipating that the money would be forthcoming to satisfy their claim, executed a quit-claim deed to the property in question and sent the same to its agents, Harris & Co., in Chicago, who afterwards sent it to the German Bank at Peoria. At the time of its execution the grantee was not named nor the consideration mentioned in the deed, but the same was afterwards written in the deed, before its delivery, by Thomas F. Dow, a clerk in the Harris office. Hendryx, John J. Barbero and his wife, David Hartsook, to whom Barbero had contracted to sell 100 acres of the said land, and one William Swigert, met at the German Bank, in Peoria, on August 31, 1889, and the deed was delivered to John J. Barbero upon the payment to the bank of the amount due the said company. The deed had either been sent to the bank by Harris & Co. or was brought to Peoria for delivery by a clerk from their office. When delivered the deed contained the name of John J. Barbero as grantee and recited the consideration to be $16,005.39. Dow did not have authority from the Provident company to fill the blank for the name of the grantee with the name of John J. Barbero or with any other name. In taking up this deed John J. Barbero was given credit for the payments which had been made by his mother on the Lyon contract. The amount which he actually paid was $15,480.20. Prior to this he had agreed to sell 100

acres of the land to Hartsook, and that transaction was closed and the purchase price paid on this day.  The money paid by John J. Barbero to the Provident company was made up of the purchase price of this 100 acres, ($6326.67,) $9000 furnished by Benjamin L. T. Bourland and $153.53 furnished by John J. Barbero himself.  At the same time Barbero and his wife executed and delivered to Hartsook a warranty deed for the 100 acres sold to him and a deed of trust to the remaining 857 acres of the land to Bourland to secure the loan of $9000.

On March 31, 1890, Barbero and his wife, for the expressed consideration of $21,424, conveyed to Andrew C. Housh, by warranty deed, all of the land included in the trust deed to Bourland.  This deed was, in fact, a mortgage made to secure the sum of $21,425.  The items secured by that conveyance are shown by the following statement made and agreed to by the parties to the deed at the time of the conveyance:

"1890.

| | | |
|---|---|---:|
| March 31, | to C. W. & J. J. Barbero note and interest... | $ 4842.08 |
| " " | J. J. Barbero note and interest.............. | 6381.17 |
| " " | H. J. Swabacher note, amounting to........ | 9000.00 |
| " " | Int. 7 mo. 7 pr ct........................... | 367.75 |
| " " | Mrs. C. Goesche's note..................... | 800.00 |
| " " | Int. 6 mo. 6 pr ct.......................... | 24.00 |
| " " | Cash ......................... ............ | 10.00 |
| | | $21,425.00 |

1890.

March 31, by 857 acres of land, at $25 an acre.........$21,425.00

$21,425.00"

The $9000 item is the note secured by the Bourland trust deed, and the principal of that note remains unpaid to the present time.  From the death of Nathan Barbero the lands of his estate had been in the possession of the widow.  John J. Barbero, under her direction, had the actual management thereof, and they were operated for the benefit of the widow and all the heirs but the net proceeds were all applied to the

satisfaction of the indebtedness of the deceased. After the transactions of August 31, 1889, and March 31, 1900, John J. Barbero, as before, continued in the actual management of the lands so conveyed to Housh. Out of the proceeds taxes were paid, repairs were made, the profits in some manner divided with Housh, and out of the portion thereof which did not go to the latter Calista W. Barbero and the family of John J. Barbero were supported. The widow died in 1894. On October 14, 1897, John J. Barbero, despairing, as he says, of being able to pay the amount secured by the deed to Housh and being unable to sell the land to any one else for a greater price than the $25 per acre which the mortgage indebtedness amounted to, for the purpose of releasing his equity of redemption executed a quit-claim deed to Housh for all the lands upon an expressed consideration of one dollar. The heirs of Nathan Barbero other than John J. never at any time, either before or after the transactions at Peoria on August 31, 1889, had any part in the management of the lands and never handled any of the rents and profits. Knowledge of the deed of August 31, 1889, to John J. Barbero came to his brother and sisters within a few weeks after it was made.

On January 25, 1889, before the lands in controversy had been conveyed to John J. and before the period of redemption had expired, Sarah L. McGirr filed a bill in the circuit court of Knox county against the widow and remaining heirs of Nathan Barbero for partition of the lands of which he died seized, and on March 15, 1890, after the conveyance to John J. and before the conveyance to Housh, filed a supplemental bill in said cause, (which was later amended,) pleading the conveyance from the Provident company, and alleging that it was executed pursuant to an agreement made by the said heirs with Calista W. Barbero and John J. Barbero that they would redeem for all of the heirs; that the transaction was, in fact, for all of the heirs; that Calista W. and John J. sometimes stated that the deed

to the latter was for the benefit of all the heirs and at other times pretended that the deed was taken by John J. in his own right, and praying, among other things, that said John J. Barbero be decreed to hold the title he had acquired by his deed from said company as trustee for all of said heirs.

To the original bill the widow and heirs, other than Mrs. McGirr, on March 11, 1899, filed an answer, in which it was alleged that "said premises have, by consent of all the heirs, remained wholly with the widow, who has expended the entire income in making improvements, paying interest, taxes," etc., and that "respondents are desirous of redeeming therefrom, (referring to the foreclosure sale,) and have assurance of the necessary funds from responsible parties if complainant, Sarah L. McGirr, sees cause to join with them in giving proper security upon the lands in suit therefor. Respondents have not sought, nor do they now seek, any undue or improper advantage of complainant, but would gladly join her in proper steps for redemption of all of said real estate before too late. As yet the Provident Life and Trust Company hold such property subject to the statutory rights of redemption of said widow and heirs of Nathan Barbero, and the land is well worth probably $30,000, if judiciously managed; admits that complainant, Sarah L. McGirr, is personally unable, alone, to redeem said lands from said mortgage sale, but aver the truth to be that if she will cordially join them in taking proper steps to borrow the needed redemption money for a term of years by means of a mortgage on said estate lands, it is readily practicable to do so at a moderate rate of interest, thus precluding danger of loss of such lands."

To the amended supplemental bill the widow and John J. filed an answer on February 15, 1890, alleging that Sarah L. McGirr refused to join in a mortgage to raise money to redeem, and that the redemption of said land was prevented by the failure and refusal of said Sarah L. McGirr to so join; that after the expiration of the period of redemption

John J. Barbero, in his own right and with his own means, purchased the said premises and that he was the absolute owner of the same. To the amended supplemental bill Nathan H. Barbero filed a separate answer, which admits all the allegations of the supplemental bill; states that equity and good conscience require that a trust be fastened upon the lands for the benefit of the estate of the deceased and admits that complainant is entitled to relief sought. The Provident company was made a defendant, and on February 15, 1890, filed a disclaimer. Mrs. Donason does not seem to have answered the supplemental bill. On February 7, 1893, the claim of the complainant in that suit was compromised. John J. Barbero paid Sarah L. McGirr $500, and she thereupon executed a deed to him of all her interest in the said lands. On December 19, 1893, the bill was dismissed at the cost of John J. Barbero, the order reciting "cause of action discharged." The $500 paid Mrs. McGirr was furnished by Housh.

On January 26, 1898, Nathan H. Barbero, Eliza Barbero, his wife, and Ann M. Donason, for the consideration of one dollar, executed to Nathan Donason, a son of Ann M. Donason, a quit-claim deed of all their interest in the premises conveyed by John J. Barbero to Housh, and on December 26, 1903, during the pendency of the present suit, Sarah L. McGirr conveyed to said Nathan Donason, by quit-claim deed, for the consideration of one dollar, all her interest in the said premises.

Nathan Barbero, prior to December 27, 1879, had made no advancement to his son John J. but had advanced to Sarah L. $500, to Ann M. $1500 and to Nathan H. $3560. Nathan Barbero and his children all lived near Maquon, in Knox county. Housh was in the banking business at that place and has been banker for all the members of the family. He was surety on the bond of Mrs. Barbero as administratrix of her husband's estate. He assisted her with the management of the estate and was entirely familiar with the

affairs of that estate. Prior to the loan being negotiated in
Peoria, Mr. Hendryx, as he testifies, spoke to Housh about
the matter and inquired where he would be likely to borrow
the money. Afterwards Housh asked Hendryx what his
opinion was about John J. Barbero's title, and at that time
Hendryx explained to him exactly what had been done to
vest the title in John J. Barbero.

Nathan Barbero at the time of his death owned certain
other realty, but it was all sold under a decree of the county
court of Knox county entered in a proceeding instituted by
his administratrix for leave to sell real estate to pay debts.
All the assets of his estate which came to the hands of the
administratrix were not quite sufficient to meet the indebted-
ness of the estate, aside from the mortgage indebtedness to
the Provident company. Calista W. Barbero and John J.
Barbero seem to have been practically without property,
other than their interests in the estate of the deceased.

On January 27, 1898, the bill herein was filed by Nathan
Donason, and thereafter, on December 30, 1903, he filed an
amended bill, which later was again amended or altered by
certain interlineations written upon the face thereof, and
which, while perhaps not formal amendments, were so
treated in the litigation, and upon the bill as so finally in-
terlined and amended, and which will hereafter be referred
to as the "bill," the cause was heard. The bill charges that
the deed from the Provident company to John J. Barbero
was void, because the name of the grantee was inserted
therein without authority from the grantor; that the trans-
action between John J. and the Provident company was, in
fact, a redemption, and that thereafter the children of the
deceased were each the owner of an undivided one-fourth of
the lands; that Housh was not a *bona fide* purchaser, and
knew at the time he took the conveyances of the lands that
they were held and owned by the heirs-at-law of Nathan
Barbero, deceased, as tenants in common; that the value of
said lands at the time of the foreclosure sale was at least

$30,000; sets up the conveyances from the heirs other than John J. to complainant; shows that the latter is the owner of three-fourths of the lands and Housh the owner of one-fourth; prays an accounting of rents which had accrued to complainant's grantors, and asks that Housh account for $4000, the proceeds of one tract of the land sold and conveyed by him; offers to pay proper proportion of the indebtedness existing against the lands that was created for the purpose of redeeming the same from the foreclosure sale, and proper proportion of all taxes, insurance and repairs that had been justly and legally expended upon the premises.

To the bill the heirs of Nathan Barbero, deceased, Housh, and certain other persons only nominally interested, were made defendants. Housh answered claiming ownership of the lands in fee; alleged *laches* on the part of the grantors of the complainant; charges that the complainant is a volunteer; that the conveyances to him were made upon a nominal consideration, and avers that for this reason he has no standing in a court of equity. It is unnecessary to set out the other answers.

Replications were filed and the cause was referred to J. B. Boggs, master in chancery. While the cause was pending before him he departed this life and the matter came to the hands of Phillip S. Post, his successor, who reported the evidence and with it his findings and recommendations. The master found that the premises conveyed to John J. Barbero were of the value of $40 per acre in August, 1889. His other findings, so far as material to the questions now presented to this court, were, in substance, as follows, (although not stated in the same language or given the same numbers by the master,) to-wit: (1) That John J. Barbero, upon receiving the deed from the Provident company, immediately entered into possession of the premises and thereafter claimed to be the sole owner thereof; (2) that the purchase of the premises by John J. Barbero in his own name and for his own benefit was wrongful; (3) that the

acts of John J. Barbero in entering into exclusive possession of said real estate and openly claiming the same as his own property under said deed, in paying taxes thereon and collecting the rents thereof, in mortgaging the same by deed to Housh, were sufficient outward acts of ownership to give notice to the other heirs of the deceased that possession adverse to them was intended; (4) that the rights of the heirs of Barbero other than John J., and the rights of complainant claiming under them, are barred by the *laches* of such other heirs.

Defendant Housh objected to the second finding above set out, and appellant objected to the other of said findings. The objections were all overruled and were re-filed as exceptions in the circuit court. Upon a hearing the court sustained the exception to the second finding, overruled the remaining exceptions, and in accordance with the recommendations of the master dismissed the bill for want of equity. Complainant appealed to this court and here makes the same contentions as in the circuit court, except that he does not now claim that he takes anything by virtue of the deed from Sarah L. McGirr, as her deed to John J. conveyed all interest which she had and left nothing upon which her deed to appellant could operate. He now contends that he is the owner of the undivided one-half of the real estate and entitled to an accounting as prayed by the bill.

A. M. CRAIG, C. S. HARRIS, and C. C. CRAIG, for appellant.

WILLIAMS, LAWRENCE, WELSH & GREEN, (BROWN & SOULE, of counsel,) for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

We are satisfied that the transaction by virtue of which John J. Barbero received the deed for the property now in controversy was a redemption. The widow of Nathan Bar-

bero, in negotiating the contract with the holder of the certificate of purchase, acted for herself and all the heirs of the deceased. Had that contract been consummated by her it would have been, in fact, a redemption. Although the certificate of redemption passed into a deed, yet the grantee in that deed virtually extended the period of redemption to September 1, 1889, and within that period it carried out that contract, except that John J. Barbero, as grantee, was substituted for the grantee mentioned in the contract. John J. Barbero, in closing the negotiations, was given credit for the payments that had been made on the Lyon contract by his mother, and those payments had been made for and on behalf of the widow and all the heirs. The balance of the money arose from the sale and encumbrance of land descended from Nathan Barbero, with the exception of $153.53 advanced by John J. The letter written by Mr. Hendryx, set out in the foregoing statement of facts, shows that he understood that he was acting for the Barbero widow and heirs; that he understood that the Lyon contract was a contract for redemption, and that the money which he proposed to raise if that contract had been or could be extended was money with which to effect a redemption. Moreover, he states that at the time the deed was delivered at Peoria he was acting as attorney for the estate of Nathan Barbero, and that he never knew until after he reached Peoria that the deed was to be made to John J.

According to the master's report this property in August, 1889, was worth over $38,000. It is urged by appellees that the value was, in fact, less. But if the testimony be given the most favorable construction possible to appellees, and if we take into consideration the fact that witnesses, with their knowledge of the great advance in the price of farm lands in Illinois in the last few years, are prone to estimate the value of lands at an earlier period at a greater price, perhaps, than they would have done had their testimony been taken during that period, we yet conclude that the lowest

possible value as of August, 1889, which could be placed upon this land, upon consideration of the evidence contained in this record, would be many thousand dollars above the amount actually paid at the time the deed was delivered. If this realty was only worth the $6326.67 paid by Hartsook for the one hundred acres purchased by him and the $21,425 for which John J. pledged the remainder of the land in March, 1890, the total value was $27,751.67, or more than $12,000 in excess of the amount paid the Provident company in August, 1889. It is not equitable to say that John J. Barbero became the owner of that excess in his own right when he acquired the deed by virtue of a contract made for the benefit of his mother and all the heirs of his father. The making of the deed to John J. Barbero under a contract extending the time for redemption, payment being made with the property of the widow and heirs of the deceased, excepting the small portion thereof advanced by John J., was, in effect, a redemption, and thereafter, in equity, the heirs of Barbero, as between themselves, were tenants in common of the real estate, precisely as though redemption had been made within the statutory period. If it is true that Mrs. McGirr refused to join in the redemption a different question would be presented as to her. The interest which she claimed, however, passed by virtue of a deed made by her to John J., who conveyed the same to Andrew C. Housh, and appellant does not contend that she was not entitled to the benefit of the redemption. Whether she was so entitled is therefore immaterial.

As between the Provident company and John J. Barbero the deed delivered August 31, 1889, conveyed no interest in the land at the time of its delivery, for the reason that the name of the grantee was, without authority from the grantor, inserted in a blank left in the deed at the time of its execution. (*People* v. *Organ,* 27 Ill. 27; *Whitaker* v. *Miller,* 83 id. 381.) After that deed had been delivered, however, the Provident company, in the partition suit

brought by Sarah L. McGirr, (the bill wherein averred the conveyance of the lands to John J. Barbero by the Provident company,) answered disclaiming any interest in the premises. This, we think, ratified the act of Dow in writing the name of John J. Barbero in the blank left in the deed for the name of the grantee, so far, at least, as the appellant and those through whom he claims are concerned. *Devin* v. *Himer*, 29 Iowa, 301.

Prior to August, 1889, John J., as the employee or agent of his mother, had the actual, visible control of these lands,— that is, as her agent he was engaged in supervising the agricultural operations carried forward thereon. Appellees vigorously contend that after the receipt of the deed by him his conduct of business upon this farm and in relation to this farm was such as to give notice to his brother and sisters that he claimed to be the exclusive owner thereof. The master found that after August, 1889, he was in the exclusive possession of said real estate, paid taxes thereon, collected rents therefrom and mortgaged the same by deed to the defendant Housh, and further, that he openly claimed the same as his own property. That claim amounts to nothing unless it was brought to the attention of those who were, in equity, his co-tenants. There is in this record no evidence of any acts of an exclusive ownership of such nature as to give notice to the co-tenants that John J. was claiming the exclusive ownership of this land. The other heirs of the deceased knew that the interest of John J. had been acquired under a contract made for the benefit of all, and this knowledge on their part must be taken into consideration in determining the conclusion which they would draw from the acts of ownership exercised by him. *McMahill* v. *Torrence*, 163 Ill. 277, is authority for the statement that possession by him and payment of taxes, however long continued, the appropriation of rents, the making of slight repairs and improvements on the lands, is not, alone, sufficient, "for all this may be consistent with the continued recognition of the

rights of his co-tenants." In some way his co-tenants must be given notice "that an adverse possession and an actual disseizin are intended to be asserted against them." *Busch* v. *Huston,* 75 Ill. 343; *Ball* v. *Palmer,* 81 id. 370; *McMahill* v. *Torrence, supra.* ·

This case, upon the proof as to this question of notice, is not materially different from *Sontag* v. *Bigelow,* 142 Ill. 143, where the party setting up *laches* held a deed purporting to convey to him the title of those who were originally his co-tenants, as did John J. Barbero here. It was there held that if one of two tenants in common takes the actual possession of the land and continues to occupy same, appropriating to himself the exclusive rents and profits, and pays the taxes for more than seven years, and does nothing to apprise his co-tenant that he claims to be the owner of the entire premises, such possession will not be adverse but will be the possession of both.

Reliance is placed by appellees upon the fact that John J. Barbero, in his answer filed on February 15, 1890, to the amended supplemental bill of Sarah L. McGirr, stated that he was the absolute owner of the real estate in question. Nathan H. Barbero and Ann M. Donason in that suit were co-defendants with John J. No trial of that cause was ever had. It does not appear that either Nathan H. or Mrs. Donason knew that John J. had filed any answer, of any character, to the said amended supplemental bill or knew what defense he proposed to make thereto. Under these circumstances the answer filed by him cannot be regarded as actual notice to them that he was claiming the entire title. Mrs. Donason testified, on behalf of Housh, that John J. claimed to own all the land but never set up that claim until after the mother's death, which was in 1894 and within the statutory period. The bill herein alleged "that the said John J. Barbero, after obtaining said deed, denied that the other heirs of Nathan Barbero, deceased, had any interest in said lands, but set up and claimed to be the absolute

owner thereof." That allegation, however, cannot be regarded as an admission or confession that John J. Barbero's co-tenants had notice, at any particular time prior to the filing of the bill, that his possession was adverse as to them.

Was Housh an innocent purchaser? It appears that he was fully advised of the existence of the Lyon contract and the negotiations that preceded the delivery of the deed to John J. On March 31, 1890, at the time the deed was made to him, which, in law, was a mortgage, the suit of Sarah L. McGirr for partition of these premises was pending in the circuit court of Knox county. When he received that deed he advanced to John J. but ten dollars in cash. The other indebtedness secured by that deed had been in existence some time, and Housh, in taking that conveyance, was evidently merely getting the only security obtainable to assure the payment of pre-existing debts. Thereafter Mrs. McGirr filed an amended supplemental bill claiming that the transactions by which John J. Barbero obtained the deed from the Provident company were, in fact, a redemption, and for the purpose of ridding himself of her claim John J. Barbero paid her $500, which was furnished by Housh, and took from her a quit-claim deed. Housh knew that Nathan H. and Ann M. had each the same right that was possessed by Sarah L. We think that the knowledge that Housh had of the steps by which John J. acquired the deed from the Provident company and the information which he possessed in reference to the affairs of the estate of the deceased were sufficient to put him upon notice of the rights of Ann M. Donason and Nathan H. Barbero.

The case of *Dugan* v. *Follett*, 100 Ill. 581, upon which the appellees rely, is distinguished from the case at bar by the fact that in that case the parties who had enjoyed the possession throughout the statutory period did so without knowledge that the parties who asserted an adverse interest had any claim to the premises. As we have above pointed out, it is here otherwise as to John J. Barbero and Housh.

Appellees also urge that appellant is a mere volunteer and speculator; that he acquired his deed without giving any valuable consideration therefor, and for this reason has no standing in a court of equity in this cause. We are unable to perceive that Housh is in any other or different position than if the deed from Nathan H. Barbero and Ann M. Donason had not been made and the suit had been brought by them, except as to rents falling due before the making of the deed to the appellant, and as to those rents Housh's position in this suit is improved, as appellant can not require him to account for them. The rights of appellant, though the deed was made without consideration, are neither greater nor less than the rights of his grantors, so far as Housh is concerned, with the exception noted. If Mrs. Donason and Nathan H. had an equitable interest in this real estate they could give it to whomsoever they saw fit, and the person so acquiring it could assert the interest received against their co-tenant with the same effect that they could have done.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to the court to overrule the exceptions to the master's report taken by the appellees and to sustain the exceptions taken by the appellant to the master's finding to the effect that appellant is barred to assert his rights by virtue of the *laches* of his grantors, and to enter a decree finding appellant and appellees to be each the owner of the undivided one-half of the premises in question, other than the tract sold by Housh. Appellant is not entitled to an accounting for rents or other money or property, in the nature of profits, derived from the lands prior to the date of his deed from Ann M. Donason and Nathan H. Barbero. The cause, however, should be again referred to the master for the purpose of taking and stating the account between the parties, in which event evidence already taken may be considered without the same being retaken, and either party will be at liberty to offer such other

and further evidence as he or they desire. Housh should account, according to the ordinary rules in such cases, for rents and profits falling due after the date of the appellant's deed. Housh should also be charged with the sum of $500 on account of the advancement made by Nathan Barbero, in his lifetime, to Sarah L. McGirr. The appellant should be charged $3560 on account of the advancement made to Nathan H. Barbero and $1500 on account of the advancement made to Ann M. Donason. The evidence only shows advancements made prior to December 27, 1879. If advancements were made by the deceased after that time they should be charged to Housh or appellant, accordingly as they were made to the grantors of either. No interest should be allowed upon any advancement. Housh should account for the money received by him from the tract of real estate which he sold, with interest thereon at five percentum per annum from the date when he received the proceeds. Housh should have credit for the $153.53 paid by John J. Barbero out of his own funds to the Provident company, with interest thereon at five percentum per annum from the date of the deed to appellant from Mrs. Donason and Nathan H. If the commissioners divide the land, the various charges and the sums due upon the accounting may be secured by a decree in favor of the party to whom the balance is due, which can be made a lien upon the lands set off to the other party. If the lands should be sold, the balance due upon the accounting can be adjusted out of the proceeds. A decree appointing commissioners may be entered after the accounting is concluded. The costs of this court will be adjudged against Housh.

*Reversed and remanded, with directions.*