NATHAN A. STOWELL *et al.* Appellees, *vs.* PATRICK M. LYNCH *et al.* Appellants.

*Opinion filed October 27, 1915.*

1. LIMITATIONS—*what is necessary to establish title under section 1 of the Statute of Limitations.* To establish title under section 1 of the Statute of·Limitations there must not only be twenty years' continuous and uninterrupted possession, but such possession must also be hostile in its inception and so continue, being visible, exclusive and notorious, acquired and retained under claim of title inconsistent with that of the true owner.

2. SAME—*when possession is not hostile in its inception.* A wife who goes into possession of her husband's land because of his absence and continues in possession at his death as owner, by descent from him, of an undivided one-half interest in the land with a dower interest in the other half, does not have possession, hostile in its inception, as against heirs-at-law of the husband, who at his death succeeded to an·undivided one-half interest in the land.

3. SAME—*possession by one tenant in common must amount to a disseizin to be adverse.* While one tenant in common may obtain title by limitation against his co-tenants, it must be by acts that would amount to a disseizin, and there must be something more than mere possession, appropriation of the rents and profits and payment of taxes by one tenant in common to bar the right of other co-tenants.

4. SAME—*strong evidence necessary to show adverse possession by a co-tenant.* The evidence must be stronger to establish adverse possession against co-tenants than is necessary to establish ordinary adverse possession, and there must be outward acts of exclusive ownership of an unequivocal character, of such a nature as by their own import will give notice to the co-tenants that an actual disseizin is to be asserted against them.

5. SAME—*co-tenants must be given notice in some way in order to start the Statute of Limitations.* Where one claims title by adverse possession and limitation against co-tenants, the co-tenants must be given notice in some way that an adverse possession is being asserted against them in order that the Statute of Limitations may begin to run.

6. LACHES—*equity ordinarily follows the law in barring claims by laches.* In fixing the period in which claims will be barred by *laches* equity ordinarily follows the law, and it is only when the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that *laches* will be held to bar his right within the statutory limitation period.

7. SAME—*what may be considered on question of laches.* In determining whether heirs have been guilty of *laches* in delaying suit for partition until the co-tenant in possession has made a deed purporting to convey the whole title, the facts that the ancestor is merely presumed, from absence, to be dead, that there were rumors after the seven-year period of his disappearance that he was alive, and that the improvements made by the co-tenant in possession were only such as were necessary and did not equal the rents received by her, may be considered.

8. SAME—*what may be shown as bearing upon the question of laches.* As bearing upon the question of *laches* by heirs in waiting until their co-tenant had conveyed the whole title before beginning suit against the grantee for partition, the facts that the grantee knew of the existence and rights of the heirs, that he knew his grantor had unquestioned title to an undivided one-half interest in the land, and that he paid only about one-half of what the land was worth, may be shown in connection with the other circumstances.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

CAMERON & CAMERON, McCABE & BIRKETT, and FRANK J. QUINN, for appellants.

JOSEPH W. MAPLE, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellees, complainants in the court below, filed their bill for partition of a 90-acre farm in Millbrook township, Peoria county, claiming, together with certain of the defendants, to be the owners of an undivided half interest in the said farm as descendants of the brothers and sisters of Millard F. Hull, deceased, and heirs-at-law of the said deceased, and claiming to be co-tenants with Patrick M. Lynch, owner of the other undivided half interest in said farm as grantee of Mary A. Hull, widow of said Millard F. Hull. Hull, as alleged in the bill, had disappeared and was last heard from about the year 1871 and was presumed dead after seven years, and he left no children or descendants of children him surviving.

Patrick M. Lynch and James W. Lynch, the latter as administrator of the estate of Mary A. Hull, deceased, filed their answer, denying that complainants had any interest in the premises; admitting that Millard F. Hull disappeared in 1871 and was presumed to have died about June 8, 1878, and admitting the heirship of the complainants as alleged. It was set up in the answer that the title of Patrick M. Lynch is derived from a warranty deed from his sister, Mary A. Hull, widow of Millard F. Hull; that Mary A. Hull on the death of her husband became seized in fee of an undivided one-half of the premises in question and was entitled to dower in the other half, and that her dower was never set off or assigned to her; that she obtained possession of said premises about the year 1878, and thereafter exercised acts of ownership over said premises until she conveyed the same by deed·to her brother Patrick M. Lynch, and that she held and possessed said premises under claim of ownership, through open, adverse, notorious and exclusive possession thereof, paid the taxes thereon more than thirty years consecutively, erected valuable and permanent improvements on the said premises, leased said premises for about thirty-five years, and collected and received the rents in her own right and to her own use; that during all that time no other person or persons ever claimed any right, title or interest in said land, and that if any other person or persons ever had any right, title or interest therein, by descent or otherwise, the same is now, and has long since been, barred by the Statute of Limitations of this State, and defendants claim the benefits of such statute.

Issue was joined on the bill and answer and the cause was referred to the master in chancery to take the evidence and report his conclusions. It appears from the evidence as reported by the master, that Millard F. Hull was in his lifetime the owner in fee simple of the premises in controversy. Neither he nor his wife, Mary A. Hull, ever at

any time resided upon the land. About the year 1869 Hull left the State of Illinois and went to DesMoines, Iowa, to live and lived there about a year, when he left there to seek a new location. After he left DesMoines, his wife, not hearing from him for some time, returned to Peoria county and made her home with her brother James Lynch, who lived near the land, until she died. About June 8, 1871, she received a letter from Hull, in which he stated that he was then about to go to Missouri or Arkansas to look for a location, and that when he found one that suited him he would send for her. This was the last that was ever heard of him by his wife or any of his relatives, although they made search and inquiry to discover whether he was living or dead, and his whereabouts. After a few years it came to be generally accepted among his relatives that Hull was dead. When Mrs. Hull returned to Peoria county, about the year 1870 or 1871, the farm was in charge of Augustus Stowell, brother-in-law of Hull and father of certain appellees. About the year 1873 or 1874 Mrs. Hull demanded possession of said premises. Pursuant to her request and demand, about the year 1873 or 1874 Stowell surrendered possession of the said premises to her. The exact time when she obtained possession is not shown by the evidence, but the witness Katherine Kelly fixes the time when Mrs. Hull went to Peoria to consult a lawyer about getting possession, as in 1873 or 1874, and a year later she had possession of the land. Tax receipts were offered in evidence to show that Mrs. Hull paid the taxes in 1873 and from 1875 on, to and including the year 1911. Her brother James Lynch helped her keep up the farm and negotiated leases and collected rents. Hiram C. Camp, a witness for appellants, testified that he rented the place from James Lynch in 1874, paying $300 cash rent that year. It sufficiently appears that Mrs. Hull obtained possession of the farm prior to the presumed death of Hull, and continued to hold the open, notorious and exclusive

possession of the same and received and collected all rents and profits therefrom until November 10, 1911, when she conveyed the premises to her brother Patrick M. Lynch by warranty deed of that date. The deed was for the consideration of $8000, the grantor reserving a lien upon the premises for the payment of $6500 of said purchase price, together with interest thereon at the rate of five per cent per annum. It recites that said premises are "now owned and possessed by me," and further recites that "this deed and conveyance is made by the grantor in her own right, under the claim that she, as owner of said premises, has held and possessed them under claim of ownership, through open, adverse, notorious and exclusive possession thereof, together with the payment of the taxes thereof for more than thirty-five years last past, and has exercised other acts of ownership over said premises by making permanent and valuable improvements thereon during said period of time." The consideration paid by Lynch was about one-half the then value of the land. Mrs. Hull died intestate, on December 15, 1912. From time to time prior to June, 1878, Mrs. Hull placed certain improvements on the land, among others a hay shed and barn, and also built a dwelling house to take the place of a house that had burned down, and kept the fences upon the premises in repair. All of said improvements were comparatively inexpensive in character and were no greater than was reasonably necessary to secure tenants and a reasonable revenue from said property, and were all paid for by her from her own resources or from rentals received from said property, and she likewise paid all taxes after she took possession of said premises, and at various times took out insurance policies on buildings on the premises payable to her. The farm was commonly known in the neighborhood as the Hull farm, or the Mary Hull farm, and in conversations between her and other persons Mrs. Hull sometimes spoke of it as her farm. The master found, and this finding is not questioned, that

at the time Mrs. Hull first took possession of the premises
she made no claim of title thereto or right therein except
through her marriage to Millard F. Hull, and at the time
of his death she was in possession of the premises through
and under and in attornment to his title thereto and not
otherwise, and was not making any claim adversely to the
title possessed by him at the time of his death; that she
first received possession of said premises in express recog-
nition of and in attornment to the title of Hull, and upon
his death she then held such possession pursuant to her
rights as his widow and one of his heirs-at-law, and could
not lawfully claim adversely to the title of the other heirs-
at-law of Hull until she at least in some unequivocal way
gave them notice of her adverse claim, and that the evi-
dence was insufficient to show any such notice of adverse
claim until the execution and recording of the deed to
Patrick M. Lynch; that one of the essential elements of
title by adverse possession is, that at its inception it is ac-
quired and is thereafter held in hostility to and in denial
of the true title; that the possession of Mrs. Hull was ac-
quired in subjection to and under the title of her husband,
Millard F. Hull, and there is no evidence in the record to
show she ever claimed any other or different title until the
execution by her of the deed to her brother Patrick M.
Lynch. The master further found that the equities were
with the complainants and recommended that partition be
decreed as prayed in the bill.

Objections were filed to the master's report, which were
overruled, and exceptions of the same nature were then
filed, which were also overruled. The court entered a de-
cree in accordance with the recommendations of the mas-
ter, partitioning the premises as prayed in the bill, one-half
to appellees, as the natural heirs-at-law of Millard F. Hull,
according to their several interests as found, and one-half
to Patrick M. Lynch, as grantee of Mary A. Hull, widow

of Millard F. Hull. Appellants, Patrick M. and James W. Lynch, have perfected an appeal to this court.

The questions presented for determination as preserved by the objections and exceptions to the master's report and the assignments of error to the decree of the lower court are, whether or not Mary A. Hull, under the circumstances as shown by the evidence, acquired title to the premises, under section 1 of the Statute of Limitations, by twenty years' adverse possession, and whether appellees, as heirs-at-law of Millard F. Hull, are precluded by the same section from maintaining their bill.

There is practically no dispute as to the evidence. Both parties claim the land through Millard F. Hull. His ownership of the land at the time of his disappearance and presumed death is alleged in the bill and admitted by the answer, as is also the heirship of the parties. Accordingly, for the purposes of this suit it can be assumed that Hull, the owner of the land, died intestate June 8, 1878, leaving his widow and heirs-at-law as alleged in the bill of complaint; that at the time of his death, intestate, his widow was in possession of the land and became seized of an undivided one-half thereof as heir-at-law and entitled to dower in the other half. Subject to said dower interest one-half of said land became the property, by descent, of the appellees, brothers and sisters of the deceased and their descendants. Mary A. Hull and those under whom appellees claimed were tenants in common of said land, and the effect of section 1 of the Statute of Limitations, under which appellant Patrick M. Lynch claims, must be considered with reference to this situation of the parties.

To establish a title under section 1 of the Limitation act not only must there be twenty years' continuous, uninterrupted possession, but such possession must be hostile in its inception and so continue. It must be visible, exclusive and notorious, and be acquired and retained under claim of title inconsistent with that of the true owner. All these

elements must concur. (*Downing* v. *Mayes,* 153 Ill. 330; *Reuter* v. *Stuckart,* 181 id. 529; *Clark* v. *Jackson,* 222 id. 13; *Lambert* v. *Hemler,* 244 id. 254; *Kinsella* v. *Stephenson,* 265 id. 369.) Tested by the above rule, the taking and holding possession of the land by Mary A. Hull was not hostile or adverse. It must be remembered that at the time she acquired possession her husband was living, as far as known, and the possession she took was because of his ownership of the land and his absence and was in attornment to his title. This was the character of her possession when he is presumed to have died, whereupon she became seized of an undivided one-half of said land as his heir, with the right of dower in the other half. She was a tenant in common with the other owners and had taken possession under rightful claim and not adversely. While it is true that one tenant in common can obtain title by limitation against his co-tenants, it must be by acts that would amount to a disseizin. There must be something more than mere possession and an appropriation of the rents and profits and payment of taxes to bar the rights of a co-tenant. The evidence must be stronger than that necessary to establish ordinary adverse possession. There must be outward acts of exclusive ownership of an unequivocal character, and of such a nature as by their own import will give notice to the co-tenants that an actual disseizin is intended to be asserted against them. (*Peabody* v. *Burri,* 255 Ill. 592.) Where one claims title by adverse possession and limitation against co-tenants, the co-tenants must be given notice in some way that an adverse possession is being asserted against them in order that the statute may commence to run. (*Donason* v. *Barbero,* 230 Ill. 138, and cases cited; *McMahill* v. *Torrence,* 163 id. 277; *Sontag* v. *Bigelow,* 142 id. 143; *Long* v. *Morrison,* 251 id. 143.) In *Sontag* v. *Bigelow, supra,* the court said (p. 154): "Here the defendant did nothing to apprise the plaintiffs that he was claiming to be the absolute owner of the en-

tire premises except to receive the rents and pay the taxes, which in the case last cited [*Ball* v. *Palmer*, 81 Ill. 370,] was held to be insufficient. Had the defendant, before he went into the possession of the property, acquired title or color of title from a stranger and entered claiming the land under such title, then he might properly invoke the Statute of Limitations as a bar. But he does not occupy that position. He acquired the title of the heirs of Alfred Bigelow, who were tenants in common with plaintiffs, and entered into possession under such title, and, so far as appears, never gave the plaintiffs notice that he was claiming under any other or different title."

*Kirby* v. *Kirby*, 236 Ill. 255, was a case similar in some respects to the case at bar. In that case, in speaking of the elements necessary for a surviving husband to establish a title by twenty years' adverse possession as against the children and heirs-at-law of his deceased wife, who in her lifetime was the owner of the land, this court said, on page 264 of the opinion: "We do not think, under the circumstances of this case and the relation of the parties to each other, that appellees have established title in Joshua Kirby by twenty years' adverse possession. As the surviving husband of Mary E. Kirby, Joshua Kirby had an estate of homestead in the premises and had a right to reside thereon. He was also entitled to dower in the residue of the land. While his dower was never assigned, yet the fact that he had a right of dower and homestead in the premises, and the further fact that the owners of the fee were his children, would require acts on his part of the most unequivocal character to render this possession adverse to his children. In *Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430, it was held that the adverse possession required to constitute a bar to the assertion of the legal title by the owner must be 'hostile or adverse, actual, visible, notorious and exclusive, continuous, and under a claim or color of title.' The same rule was announced in *Downing*

v. *Mayes,* 153 Ill. 330, and many other cases to be found
in our Reports. From the earliest decision in this State to
the present time it has been held that a party claiming title
by adverse possession must prove his possession was ad-
verse to the true owner, by clear and positive evidence.
This cannot be established by inference, but the proof must
show clearly that the party in possession claimed the land
as his own, openly and exclusively. In *White* v. *Harris,*
206 Ill. 584, this court said (p. 592) : 'A party claiming
title by adverse possession always claims in derogation of
the right of the real owner. He admits that the legal title
is in another. He rests his claim, not upon a title in him-
self as the true owner, but upon holding adversely to the
true owner for the period prescribed by the Statute of Lim-
itations. Claiming a benefit from his own wrong, his acts
are to be construed strictly.' (*Cornelius* v. *Giberson,* 25
N. J. L. 31.) 'Adverse possession cannot be made out by
inference or implication, for the presumptions are all in
favor of the true owner, and the proof to establish it must
be strict, clear, positive and unequivocal.' (*Zirngibl* v. *Cal-
umet Dock Co.* 157 Ill. 430.) The rule is, that every pre-
sumption will be made in favor of the holder of the legal
title, and no presumption will be made in favor of the
holder of color of title only." In the same case, on page
266 of the opinion, it is said: "In *DeWitt* v. *Shea,* 203
Ill. 393, the widow of a deceased owner occupied and lived
upon lands for more than forty years after the death of her
husband, and it was held this possession was not adverse.
In *Musham* v. *Musham,* 87 Ill. 80, and *Riggs* v. *Girard,*
133 id. 619, it was held that the occupation by a widow
of lands of her deceased husband in which she had right
of homestead and dower, however long continued, could
not be regarded as adverse to the heirs. The statute un-
der which the dower right accrued in these cases gave the
widow the right to the possession of the dwelling house
and the plantation thereto belonging until the assignment of

her dower. This was called the widow's quarantine, and was abolished by the act of 1874. In *Reuter* v. *Stuckart,* 181 Ill. 529, a bill was filed by a surviving husband for the assignment of homestead and dower in real estate alleged to have been owned by complainant's deceased wife at the time of her death. The deceased wife of complainant was a widow when he married her, and her former husband, by whom she had five children, was the owner of the premises, and at the time of his death, December 29, 1874, the family resided on the premises in controversy. The bill alleged that complainant's deceased wife had been in the adverse possession of the premises continuously since 1876 to her death, in 1897, and that during all that period the heirs of the former husband of complainant's wife had done nothing whatever to assert title to the land. The court said in that case (p. 543) : 'We have held that the possession by the widow, under her statutory right, of the dwelling house and land is not adverse to the title of the heirs but is entirely consistent and in harmony with such title. (Citing cases.) It follows that in this case Mrs. Reuter acquired no title by an adverse possession of twenty years.' "

The record in this case is barren of any facts or circumstances showing notice on the part of Mary A. Hull to her co-tenants, or any of them, that she was claiming the land adversely, prior to the time she conveyed the premises by deed to Patrick M. Lynch. Some of the heirs-at-law of Hull, under whom appellees claim, resided in the vicinity of the land and others did not. Several of them disappeared and have not been heard from for several years and are presumed dead, the same as Hull. It must be inferred from the language of the deed made in 1911, from Mrs. Hull to Patrick M. Lynch, that both Mrs. Hull and Lynch had full knowledge of the rights and interests of appellees in the land as heirs-at-law of Hull. As between co-tenants, exclusive possession of land and the appropriation of all the

rents and profits and the payment of taxes cannot be relied upon by the possessors with notice as barring the rights of co-tenants, unless the fact that such possession was hostile is brought to the notice of such co-tenants. (*Donason* v. *Barbero, supra.*) It is true that Mrs. Hull was in possession of the land and collected all the rents and profits, but these circumstances, alone, are not sufficient to establish a title by limitation, particularly as against tenants in common. (*McMahill* v. *Torrence, supra; Sontag* v. *Bigelow, supra; Long* v. *Morrison, supra.*) It is impossible to lay down a rule as to what constitutes a disseizin by adverse possession in every case. Much depends upon the situation of the parties, the property involved and the opportunity of the parties in interest to know and appreciate all the circumstances. Each case stands on its own peculiar facts, and so must this case. While it has been often held by this and other courts that a title by limitation can be obtained by a tenant in common against co-tenants, and many of such cases have been cited by counsel for appellants in their able and exhaustive brief, in all these cases it was held that co-tenants against whom a limitation title was asserted either had actual notice of the hostile and adverse possession of the claimant, or the facts and circumstances were such that notice of adverse possession was necessarily implied. Those cases are distinguished in the opinion in *Peabody* v. *Burri, supra.* We are aware of no authority which holds that mere possession is sufficient.

A consideration of the facts and circumstances in the case at bar leads to the second point urged by counsel for the appellants, that the appellees are barred by reason of their *laches* from maintaining this suit. The case at bar differs from any of the authorities to which we have been referred in this: The right of appellees to bring an action for their interest in the premises dated from the death of their ancestor, and his death was merely presumed. The widow and his relatives continued making inquiries to as-

certain if he were living or dead, and his whereabouts, for many years after his disappearance. There were rumors that he was still living. One witness said he had a conversation with Mary A. Hull relative to a statement by a sister of the witness that she had seen Millard F. Hull in Wellington, Kansas, somewhere along before 1885. The heirs who had an interest in this land could hardly be expected to take the necessary steps to assert their rights with the same promptness as they otherwise would had the fact of their ancestor's death been established beyond any doubt. Undoubtedly there existed in their minds the hope, and even the belief, that he would some day return, and there is nothing in the record which would indicate that they were aware of the legal presumption that a man is dead after he has disappeared and not been heard from for seven years and that they could assert their rights as heirs-at-law after their ancestor was presumed dead. In fixing the period in which claims will be barred by *laches,* equity follows the law, and, as a general rule, where the period of limitation is fixed by statute under which a claim will be barred in courts of law, courts of equity will by analogy adopt the same period of limitation. It is only when the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that *laches* will bar his right within the statutory limitation period. (*Compton* v. *Johnson,* 240 Ill. 621.) There was nothing in the acts of appellees, or anything done by Mrs. Hull or her grantee, Lynch, by reason of the delay and acquiescence of appellees, whereby the latter should be estopped from asserting their title. We infer from the record, judging from the amount of cash rent that was paid in certain years, that the land reasonably rented for $300 and upward, annually, during most of the time it was rented by Mrs. Hull, and while the amount of rent received is not shown nor the amount expended for improvements, the master found that the improvements and repairs were only such as were nec-

essary to keep the place in condition to rent, and it would seem that the receipts from rents far exceeded the amounts expended for taxes, repairs and such small improvements as were put on the place. Nor is the appellant Patrick M. Lynch in any position to complain. He undoubtedly knew all about the ownership of the land. The terms of the deed by which he took title expressly stated that the grantor claimed to own the entire premises by reason of a limitation title, and he undoubtedly was aware of the fact that the grantor, his sister, aside from any title she claimed from limitation, was the owner of one-half of the property as heir-at-law of her husband. As shown by the evidence, he only paid about one-half what the land was worth. While this evidence was objected to and its admission is assigned for error, we think it is proper in connection with the other facts and circumstances of the case. It is a circumstance which, standing by itself and unexplained, would seem to indicate that Lynch was only paying for what he was sure to get in any event,—that is, the undivided one-half interest in the land to which his sister had unquestionably a good title.

For the reasons given, we think the decree of the circuit court was right, and it will be affirmed.

*Decree affirmed.*