HASSIE L. THOMAS, Appellee, *vs.* TEMPERANCE I. CHAPIN *et al.* Appellants.

*Opinion filed June 22, 1916.*

1. LIMITATIONS—*when deed is color of title to grantors' interest, only.* Where the grantors in a quit-claim deed convey their interest in the land, the deed is color of title to such interest, only, as the grantors had.

2. SAME—*when a deed may be color of title to all the land.* A deed made by a part, only, of the owners of land, which purports to convey the land described and not merely the interest of the grantors, may be color of title to all the interest in the land if accepted and acted upon by the grantee in good faith as conveying the entire interest.

3. SAME—*when Statute of Limitations does not begin to run against a co-tenant.* The Statute of Limitations does not begin to run against the owner of the legal title to an undivided interest in land and in favor of her co-tenants, notwithstanding they have exclusive possession of the land, until there has been some act upon their part amounting to an ouster or disseizin of the other.

4. LACHES—*when rights of co-tenant are not barred by laches.* If the rights of a co-tenant in land are not barred by the Statute of Limitations they will not be held to be barred by *laches* unless there has been something in her conduct or in the circumstances which would make it inequitable to permit her to assert title.

APPEAL from the Circuit Court of Fulton county; the Hon. HARRY M. WAGGONER, Judge, presiding.

HARVEY H. ATHERTON, for appellants.

O. J. BOYER, and J. D. BRECKENRIDGE, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellee, complainant in the court below, filed her bill for partition to the May term, 1915, of the circuit court of Fulton county, claiming to be the owner of a one-sixth interest, as tenant in common with appellants, in a forty-acre tract of land, described as the northeast quarter of the southwest quarter of section 11, in township 5, north, range 3, east, in said county. Appellants answered the bill, setting up a title by limitation under section 1 of the Limitation act, by adverse possession for twenty years, and also by seven years' possession under claim and color of title obtained in good faith, and payment of taxes. Appellants also filed a cross-bill asking that the title be quieted in them. Issues were joined on the bill and cross-bill and the cause was referred to the master in chancery of said court, who heard the evidence produced by the parties and found for the appellee, and recommended that partition be decreed as prayed in her bill and that the cross-bill of appellants be dismissed for want of equity. Objections were filed to the master's report, which were overruled and by agreement of the parties were ordered to stand as exceptions. On hearing, the court overruled all exceptions to the master's report and entered a decree in accordance with the prayer of the bill, approving the master's report and finding appellee to be the owner of an undivided one-sixth of said land and appellants of the other five-sixths, and appointed commissioners to make partition according to the rights and interests of the parties so found. The appellants have appealed from the decree, assigning as error the action of the court in decreeing that appellee is the owner of one-sixth of the land; in not finding that appellants are the sole owners

thereof; in not finding that whatever interest appellee had was barred by adverse possession and payment of taxes under claim and color of title; that there is a variance between the allegations of the bill and the proof, and that there is no competent evidence to support the decree.

There is no variance between the material allegations of the bill and the proof and there is very little dispute as to the facts. It appears from the evidence that the land in controversy was formerly owned by James Harrison, who acquired title thereto in 1856. He died intestate in Fulton county ten years later, seized of this land, leaving Sarah C. Harrison his widow, and Francis M. Harrison, William C. Harrison, Barton L. Harrison, Ruth Toncray, Mary Y. Clary and Louisa J. Walker as his children and only heirs-at-law. On August 21, 1866, the widow and all the children except Louisa J. Walker made a quit-claim deed of conveyance of "their interest" in the said land to Newton J. Walker, who was the husband of Louisa, and they entered into possession and actual occupancy of said land and were in possession and occupancy of the same until the death of Louisa, who died intestate about the year 1873, leaving her surviving said Newton, her husband, and the appellee, Hassie L. Thomas, then about four years old, as her child and only heir-at-law. Newton J. Walker afterwards re-married and lived on the land, appellee, his daughter, living with him until he conveyed "his interest" in the land by quit-claim deed to Sarah E. Clary and Mary F. Williams, March 3, 1876. Sarah E. Clary by quit-claim deed conveyed her interest to Mary F. Williams October 11, 1877, and on October 8, 1879, Mary F. Williams, joined by her husband, conveyed the forty acres by quit-claim deed to William C. Harrison. The latter died testate May 6, 1899, and by his will gave his wife, Matilda Harrison, the life use of the land and upon her death the remainder to the appellants, Temperance I. Chapin, Ora F. Chapin and E. Florian Chapin Farmer, his daughter and grandchildren,

274 — 7

respectively. Matilda Harrison died testate after the commencement of this suit, and a supplemental bill was filed setting up such fact, and the pleadings were amended accordingly. ˙All the successive grantees in the deeds above named, so far as shown by the evidence, had the record title to but five-sixths of the land in controversy but had full possession of all the land and collected all the rents and profits and regularly paid the taxes each year. Appellee during all her life, except for about two years, lived in the vicinity of this land, and prior to the commencement of this suit never made any claim to an interest in the land. She was forty-six years old at the time of the trial of this suit in the circuit court and under no legal disability. Her father, Newton J. Walker, died in 1911. She claims title to an undivided one-sixth of the land by inheritance from her mother, Louisa J. Walker, who inherited that interest as a daughter of James Harrison. Appellants contend that if appellee ever had any interest in the land it has long since been barred by twenty years' adverse possession and payment of taxes by William C. Harrison and his grantors; also by possession and payment of taxes under claim and color of title by William C. Harrison and his grantors; also by the adverse possession and payment of taxes by the heirs of William C. Harrison claiming under his will; also by *laches* on appellee's part in not asserting any claim to an interest in said land.

The step-mother of the appellee, who was the widow of Newton J. Walker, testified that the latter had stated to her that appellee had an interest in the land and he could not convey her interest. This evidence was objected to, and we think it was improper under section 5 of the Evidence act. But there is sufficient evidence without this to support the decree. It does not appear that appellee knew she had any interest in the land in controversy, prior to the beginning of this suit. The last person who had full title to the land, as appears from the record, was the grandfather of

appellee, James Harrison. By his death, and by the conveyance by his widow and five of his children and heirs-at-law to Newton J. Walker, said Newton J. Walker and Louisa J. Walker, his wife, who was the remaining heir of James Harrison, became the owners of said land as tenants in common and were seized of the same,—Newton J. Walker of an undivided five-sixths interest and Louisa of an undivided one-sixth interest in said land. By the death of Louisa, intestate, the appellee became the owner, by inheritance, of the one-sixth interest of her mother, subject to the dower and homestead rights of Newton J. Walker, and Newton J. Walker and appellee were owners of said land as tenants in common, owning, respectively, a five-sixths and a one-sixth interest.

As has been noted, the different deeds made to the land after the death of James Harrison were all deeds of quitclaim, and the last owner by deed was William C. Harrison, who by reason of the deed from Mary F. Williams and husband became the owner of the five-sixths interest in said land in 1879. From that time on until the death of Harrison he and appellee were tenants in common, owning, respectively, a five-sixths and a one-sixth interest. All the deeds in the chain of title, commencing with the deed from the widow and five of the heirs-at-law of James Harrison, deceased, except the deed from Mary F. Williams and her husband to William C. Harrison, by their terms conveyed only whatever interest the grantors had, and would be color of title to such interest only. (*Busch* v. *Huston,* 75 Ill. 343.) The deed from Mary F. Williams and her husband conveyed the land and was good as color of title to all interest in the land if accepted and acted upon by the grantee in good faith as conveying the entire interest, but there is nothing besides the deed itself to show that the grantors in that deed intended thereby to convey the entire interest in the land or that the grantee so accepted the same, and the deed actually conveyed what interest the grantors

had, which was an undivided five-sixths. William C. Harrison was the son of James Harrison and one of his heirs who had originally joined in the conveyance to Newton J. Walker, and was an uncle of the appellee. At the time he received his deed, as aforesaid, the appellee was ten years old. They lived in the same neighborhood and Harrison knew and recognized her as his niece, as is shown by the evidence. It is true that Harrison and the devisees under his will have had full possession of the land ever since he first acquired title thereto and have paid all taxes thereon, but as said by this court in the case of *Peabody* v. *Burri*, 255 Ill. 592, on page 599 of the opinion: "This court, in discussing the question when the possession of one co-tenant may be regarded as adverse to the others, has repeatedly stated that it is not sufficient that he continues to occupy the premises and appropriate to himself the exclusive rents and profits, makes slight repairs and improvements on the land and pays the taxes, for all this may be consistent with the continued recognition of the rights of his co-tenants. To constitute a disseizin there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them."

It is not shown that anything was ever said or done by appellants, or by William C. Harrison in his lifetime, or, in fact, by any of the owners of the five-sixths interest of the land in controversy, to bring notice to appellee that they were claiming sole title adversely to her, nor was anything done which in law would. amount to an ouster or disseizin or notice to her that they were claiming full title to the land. The interest of William C. Harrison went to his widow and children and grandchildren, and they simply succeeded him as tenants in common with appellee, and, in fact, the record title to the land has never changed since the

death of the mother of appellee. She has since her mother's death been the owner, as a tenant in common, of an undivided one-sixth, appellants being the present owners of the remaining undivided five-sixths, but the respective interests of the parties and of the predecessors in title of appellants, as tenants in common, have always been there, and the rule necessary for them to obtain title by adverse possession or limitation has always applied. While it is true that tenants in common can obtain title against their co-tenants by adverse possession and limitation, nothing was ever done, as disclosed by the record, either by appellants or by their predecessors in title, that will bring them within the rule established by the courts of this State. In *Smith v. Tucker*, 250 Ill. 50, where the defendants to a bill in chancery brought for an accounting of the rents and profits of certain land and to enjoin the committing of waste and for other relief had set up the Statute of Limitations as a defense, it was held that testimony by the defendants to said bill to the effect that since they went into possession of the land in controversy their possession had been exclusive and peaceable, that they had exercised acts of ownership and claimed to own all the land, that they paid the taxes thereon regularly every year, and that no person claimed the premises adversely, did not show an ouster of other tenants in common nor show a title by limitation. In the late case of *Stowell v. Lynch*, 269 Ill. 437, it was said, on page 444 of the opinion: "Where one claims title by adverse possession and limitation against co-tenants, the co-tenants must be given notice in some way that an adverse possession is being asserted against them in order that the statute may commence to run. (*Donason v. Barbero*, 230 Ill. 138, and cases cited; *McMahill v. Torrence*, 163 id. 277; *Sontag v. Bigelow*, 142 id. 143; *Long v. Morrison*, 251 id. 143.) In *Sontag v. Bigelow, supra,* the court said (p. 154) : 'Here the defendant did nothing to apprise the plaintiffs that he was claiming to be the absolute owner of

the entire premises except to receive the rents and pay the taxes, which in the case last cited (*Ball* v. *Palmer,* 81 Ill. 370,) was held to be insufficient. Had the defendant, before he went into the possession of the property, acquired title or color of title from a stranger and entered claiming the land under such title, then he might properly invoke the Statute of Limitations as a bar. But he does not occupy that position. He acquired the title of the heirs of Alfred Bigelow, who were tenants in common with plaintiffs, and entered into possession under such title, and, so far as appears, never gave the plaintiffs notice that he was claiming under any other or different title.'" In the case at bar appellants and their predecessors in title merely occupied the land, received all the rents and income therefrom and paid the taxes. They did nothing to assert adverse possession or claim of title against the appellee as co-tenant. This was not sufficient to establish title in them by adverse possession and limitation.

As to the question of *laches,* this is a case in which appellants' only claim of title is by reason of the Statute of Limitations. In fixing the period in which rights and claims will be barred by *laches* equity follows the law, and, as a general rule, where the period of limitation is fixed by statute, courts of equity will by analogy adopt the same period. If appellee's rights are not barred by the Statute of Limitations she is not barred by *laches,* unless, in addition to mere delay, there would be something in her conduct or the circumstances that would make it inequitable to permit her to assert her title. (*Compton* v. *Johnson,* 240 Ill. 621; *Stowell* v. *Lynch, supra.*) Nothing of that kind has been shown.

The decree of the circuit court, on the facts of this case shown by the record and according to the law as laid down in a long line of decisions of this court, was right and will be affirmed.

*Decree affirmed.*